UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LM GENERAL INSURANCE COMPANY, AMERICAN STATES INSURANCE COMPANY, LIBERTY MUTUAL PERSONAL INSURANCE COMPANY, LM INSURANCE CORPORATION, LIBERTY INSURANCE CORPORATION, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, PEERLESS INDEMNITY INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, SAFECO INSURANCE COMPANY OF ILLINOIS, THE FIRST LIBERTY INSURANCE CORPORATION, AND WAUSAU UNDERWRITERS INSURANCE COMPANY, <br><br>　　　　Plaintiffs, <br><br>　　vs. <br><br>ATLAS PHARMACY LLC, CUSTOM RX PHARMACY LLC, READY RX LLC, TOP CHOICE PHARMACY CORP., LEADER RX PHARMACY LLC, PETR YAKUBOVICH FAKHLAYEV, GEORGIY DAVIDOV, DAVID DAVIDOV, ALBERT PINKHASOV, AND IGOR ARONOV, <br><br>　　　　Defendants. | C.A. No.: |

## **PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty

Mutual Personal Insurance Company, LM Insurance Corporation, Liberty Insurance Corporation,

Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Company, Peerless Indemnity

Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of

1

Illinois, First Liberty Insurance Corporation, and Wausau Underwriters Insurance Company (collectively, "Liberty Mutual" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

## I.    **INTRODUCTION**

1.      Defendants, Petr Yakubovich Fakhlayev ("Fakhlayev"), Georgiy Davidov ("G. Davidov"), David Davidov ("D. Davidov"), Albert Pinkhasov ("Pinkhasov"), and Igor Aronov ("Aronov") devised and implemented a fraudulent scheme to unlawfully operate pharmacies Atlas Pharmacy LLC ("Atlas Pharmacy"), Custom Rx Pharmacy LLC ("Custom Rx"), Ready Rx LLC ("Ready Rx"), Top Choice Pharmacy Corp. ("Top Choice"), and Leader Rx Pharmacy LLC ("Leader Rx") in violation of New York law.

2.      The Defendants[1] damaged Liberty Mutual by submitting fraudulent claims through the Pharmacy Defendants[2] seeking payment for pain-relief products, including diclofenac sodium 3% gel, lidocaine 5% ointment, lidocaine 5% patches, and lidothol patches ("Topical Pain Products").

3.      The Defendants submitted the Pharmacy Defendants' claims to Liberty Mutual under New York's No-Fault laws, which provide insurance coverage to persons ("claimants") involved in automobile accidents.

4.      New York was an ideal venue for this scheme because claimants are eligible for at least $50,000.00 in coverage for necessary medical and pharmacy expenses, and because claimants can assign their No-Fault benefits to pharmacies.

---

[1] The term "Defendants" means Atlas Pharmacy, Custom Rx, Ready Rx, Top Choice, Leader Rx, Fakhlayev, D. Davidov, G. Davidov, Pinkhasov, and Aronov, collectively.
[2] The term "Pharmacy Defendants" means Atlas Pharmacy, Custom Rx, Ready Rx, Top Choice, and Leader Rx, collectively.

5.      Pharmacies can seek payment directly from the claimant's insurer, which removes claimants from the billing process and keeps them ignorant about the cost of their care.

6.      Pharmacies are not eligible to collect No-Fault payments if they fail to comply with applicable New York state licensing laws.

7.      Pharmacies are prohibited from billing for unnecessary drugs under New York's No-Fault laws.

8.      Here, the Pharmacy Defendants billed Liberty Mutual for Topical Pain Products that were medically unnecessary—the claimants did not need the Topical Pain Products, and the drugs were ineffective to treat musculoskeletal conditions.

9.      The Topical Pain Products were ordered for claimants as part of a fraudulent predetermined treatment protocol that required prescriptions for all claimants regardless of individual medical need.

10.     The Defendants knew that the Topical Pain Products billed to Liberty Mutual by the Pharmacy Defendants were medically unnecessary and ineffective.

11.     Pharmacies must also comply with a specific schedule of fees when submitting No-Fault claims because pharmacy claims are paid using rates that are calculated based on the drug's average wholesale price—a rate that is often many times greater than a drug's actual acquisition cost.

12.     The Defendants secured a steady stream of prescriptions for these drugs because of the unlawful arrangement made between the Pharmacy Defendants and Arkam Rehman, M.D., Patricia Kelly, D.O., Mani Ushyarov, D.O., Suresh Paulus, D.O., Mark Gladstein, M.D., Radha Gara, M.D., Stella Amanze, P.A., Hong Pak, M.D., and Allan Hausknecht, M.D. (collectively, the "Referring Providers"), which is in violation of New York law.

13.     The Defendants' have engaged in a pervasive pattern of fraud demonstrated by a host of other actions filed in this District.

14.     In *Allstate Ins. Co. v. Atlas Pharmacy LLC*, No. 1:22-cv-03817-BMC (E.D.N.Y.), it is alleged that Atlas Pharmacy, Custom Rx, Ready Rx, Top Choice, Fakhlayev, G. Davidov, D. Davidov, Pinkhasov, and Aronov collected payment on fraudulent No-Fault insurance claims that involved dispensing medically unnecessary topical prescription drug products.

15.     The dispensed drugs were allegedly targeted due to their high reimbursement rates, particularly those which could be acquired at a fraction of the cost of the average wholesale price. *Id*.

16.     This alleged scheme involved unlawful referral agreements with medical clinics to create prescriptions and direct patients to Atlas Pharmacy, Custom Rx, Ready Rx, and Top Choice. *Id*.

17.     In *Gov. Empls. Ins. Co. v. Atlas Pharmacy, LLC*, No. 1:20-cv-03643-RRM-PK (E.D.N.Y.), it is alleged that Atlas Pharmacy, G. Davidov, and Fakhlayev dispensed medically unnecessary topical prescription drug products pursuant to unlawful referral agreements with prescribing healthcare providers associated with multi-disciplinary medical clinics.

18.     Atlas Pharmacy, G. Davidov, and Fakhlayev allegedly directed prescribing healthcare providers to prescribe large volumes of prescriptions to Atlas Pharmacy in exchange for kickback payments. *Id*.

19.     In *Gov. Empls. Ins. Co. v. Custom RX Pharmacy, LLC*, No. 1:20-cv-02622-CBA-SJB (E.D.N.Y.), it is alleged that Custom Rx, Aronov, and Pinkhasov dispensed medically unnecessary topical prescription drug products pursuant to unlawful referral agreements with prescribing healthcare providers associated with multi-disciplinary medical clinics.

20.     Custom Rx, Aronov, and Pinkhasov allegedly directed prescribing healthcare providers to prescribe large volumes of prescriptions to Custom Rx in exchange for kickback payments. *Id*.

21.     In *Gov. Empls. Ins. Co. v. Ready Rx, LLC*, No. 1:21-cv-04765-DG-RER (E.D.N.Y.), it is alleged that Ready Rx, Aronov, and Pinkhasov dispensed medically unnecessary topical prescription drug products pursuant to unlawful referral agreements with prescribing healthcare providers associated with multi-disciplinary medical clinics.

22.     Ready Rx, Aronov, and Pinkhasov allegedly directed prescribing healthcare providers to prescribe large volumes of prescriptions to Ready Rx in exchange for kickback payments. *Id*.

23.     In *Gov. Empls. Ins. Co. v. Top Choice Pharmacy Corp.*, No. 1:22-cv-02875-MKB-TAM (E.D.N.Y.), it is alleged that Top Choice, Fakhlayev, G. Davidov, and D. Davidov dispensed medically unnecessary topical prescription drug products pursuant to unlawful referral agreements with prescribing healthcare providers associated with multi-disciplinary medical clinics.

24.     Top Choice, Fakhlayev, G. Davidov, and D. Davidov allegedly directed prescribing healthcare providers to prescribe large volumes of prescriptions to Top Choice in exchange for kickback payments. *Id*.

25.     The Defendants used nearly identical pre-printed prescription forms from common Referring Providers for the same limited number of Topical Pain Products.

26.     The Defendants enriched themselves at the expense of patients.

27.     The scheme generated vast numbers of prescriptions for the Pharmacy Defendants, but the ordering and dispensing of unnecessary drugs placed claimants at risk.

28.     Topical Pain Products were prescribed and dispensed indiscriminately, without regard for actual medical need.

29.     Overall, the Pharmacy Defendants operated in violation of New York law by dispensing and billing for drugs and medications that were prescribed pursuant to unlawful referral arrangements, were medically unnecessary, and were excessively charged.

30.     The Defendants knew that the Pharmacy Defendants were ineligible to collect No-Fault payments, yet they still created statutory prescribed claim forms (i.e., NF-3 forms and CMS-1500 forms), which falsely certified the Pharmacy Defendants' eligibility to collect No-Fault payments under New York law.

31.     The Defendants engaged in a continuous scheme to defraud by billing for Topical Pain Products that they allegedly dispensed to Liberty Mutual claimants that were: (a) medically unnecessary and provided pursuant to a predetermined treatment protocol; (b) provided pursuant to unlawful referral agreements with the Referring Providers; (c) provided in connection with forged signatures of some of the Referring Providers; and (d) fraudulently billed.

32.     Liberty Mutual reasonably relied on the facial validity of the records and bills mailed by the Pharmacy Defendants—and the representations contained therein—when making payments on the Pharmacy Defendants' No-Fault claims.

33.     The Defendants knew that the Pharmacy Defendants' No-Fault claims were false because the documents submitted to Liberty Mutual in support of the claims misrepresented or omitted material facts about the Pharmacy Defendants' eligibility to be paid under New York's No-Fault laws.

34.     The success of the Defendants' scheme to defraud relied on the transmission to Liberty Mutual, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents

warranting the Pharmacy Defendants' eligibility to collect No-Fault payments under New York law.

35.    All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

36.    Liberty Mutual estimates that the Defendants purposely submitted to Liberty Mutual hundreds of bills on behalf of the Pharmacy Defendants knowing that none of the bills were lawful under prevailing New York law relative to No-Fault insurance coverage and reimbursement eligibility.

37.    By this Complaint, Liberty Mutual brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

38.    This action seeks actual damages in excess of $1,678,643.57, which represent No-Fault payments that Liberty Mutual was wrongfully induced to make to the Pharmacy Defendants during the course of this scheme.

39.    Liberty Mutual also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to the Pharmacy Defendants (or their agents) in connection with any No-Fault claims submitted to Liberty Mutual.

## II.    **PARTIES**

### A.    **PLAINTIFFS**

40.    LM Insurance Corporation, Liberty Insurance Corporation, LM General Insurance Company, and The First Liberty Insurance Corporation are companies duly organized and existing under the laws of the State of Illinois with their principal places of business in Hoffman Estates, Illinois. LM Insurance Corporation, Liberty Insurance Corporation, LM General Insurance

Company, and The First Liberty Insurance Corporation are authorized to conduct business in the State of New York.

41.     Peerless Indemnity Insurance Company and Safeco Insurance Company of Illinois are companies duly organized and existing under the laws of the State of Illinois with their principal place of business in Warrenville, Illinois. Peerless Indemnity Insurance Company and Safeco Insurance Company of Illinois are authorized to conduct business in the State of New York.

42.     American States Insurance Company is a company duly organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. American States Insurance Company is authorized to conduct business in the State of New York.

43.     Liberty Mutual Personal Insurance Company and Safeco Insurance Company of America are companies duly organized and existing under the laws of the State of New Hampshire with their principal places of business in Boston, Massachusetts. Liberty Mutual Personal Insurance Company and Safeco Insurance Company of America are authorized to conduct business in the State of New York.

44.     Liberty Mutual Insurance Company is a company duly organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business in Boston, Massachusetts. Liberty Mutual Insurance Company is authorized to conduct business in the State of New York.

45.     Liberty Mutual Fire Insurance Company and Wausau Underwriters Insurance Company are companies duly organized and existing under the laws of the State of Wisconsin with their principal places of business in Boston, Massachusetts. Liberty Mutual Fire Insurance Company and Wausau Underwriters Insurance Company are authorized to conduct business in the State of New York.

B.    DEFENDANTS

1.    **Atlas Pharmacy LLC**

46.    Atlas Pharmacy is a domestic limited liability company organized under the laws of the State of New York.

47.    Atlas Pharmacy maintained its principal place of business at 92-13 Jamaica Avenue in Woodhaven, New York during the relevant period.

48.    Defendants Fakhlayev, G. Davidov, and D. Davidov participated in the operation and management of Atlas Pharmacy during the relevant period.

49.    As set out below, Atlas Pharmacy was infiltrated by Fakhlayev, G. Davidov, and D. Davidov, and used as an enterprise for the purpose of running a No-Fault fraud scheme.

50.    Fakhlayev, G. Davidov, and D. Davidov conducted the affairs of the Atlas Pharmacy enterprise (i.e., creating and submitting fraudulent No-Fault claims) through a pattern of mail fraud racketeering activity during the course of this scheme.

51.    Atlas Pharmacy caused the dissemination of prescription forms in violation of New York Education Law § 6810.

52.    Atlas Pharmacy participated in prohibited prescription referral arrangements in violation of 8 N.Y.C.R.R. § 29.1 and Public Health Law §§ 238-a and 238-d.

53.    Atlas Pharmacy also billed for fraudulent prescription and non-prescription drugs.

54.    Atlas Pharmacy was never lawfully entitled to collect No-Fault payments under New York Insurance Law § 5102.

55.    Atlas Pharmacy damaged Liberty Mutual by submitting fraudulent No-Fault claims and then collecting payments from Liberty Mutual on those claims.

2.    **Custom Rx Pharmacy LLC**

56.    Custom Rx is a domestic limited liability company organized under the laws of the State of New York.

57.    Custom Rx maintained its principal place of business at 102-30A Queens Boulevard in Forest Hills, New York during the relevant period.

58.    Defendants Fakhaylev, Pinkhasov, and Aronov were members of Custom Rx during the relevant period.

59.    Defendants Fakhaylev, Pinkhasov, and Aronov participated in the operation and management of Custom Rx during the relevant period.

60.    As set out below, Custom Rx was infiltrated by Fakhaylev, Pinkhasov, and Aronov, and used as an enterprise for the purpose of running a No-Fault fraud scheme.

61.    Fakhaylev, Pinkhasov, and Aronov conducted the affairs of the Custom Rx enterprise (i.e., creating and submitting fraudulent No-Fault claims) through a pattern of mail fraud racketeering activity during the course of this scheme.

62.    Custom Rx caused the dissemination of prescription forms in violation of New York Education Law § 6810.

63.    Custom Rx participated in prohibited prescription referral arrangements in violation of 8 N.Y.C.R.R. § 29.1 and Public Health Law §§ 238-a and 238-d.

64.    Custom Rx also billed for fraudulent prescription and non-prescription drugs.

65.    Custom Rx was never lawfully entitled to collect No-Fault payments under New York Insurance Law § 5102.

66.    Custom Rx damaged Liberty Mutual by submitting fraudulent No-Fault claims and then collecting payments from Liberty Mutual on those claims.

### 3. Ready Rx LLC

67.     Ready Rx is a domestic limited liability company organized under the laws of the State of New York.

68.     Ready Rx maintained its principal place of business at 95-16 Queens Boulevard in Rego Park, New York during the relevant period.

69.     Defendants Pinkhasov and Aronov were members of Ready Rx during the relevant period.

70.     Defendants Pinkhasov and Aronov participated in the operation and management of Ready Rx during the relevant period.

71.     As set out below, Ready Rx was infiltrated by Pinkhasov and Aronov and used as an enterprise for the purpose of running a No-Fault fraud scheme.

72.     Pinkhasov and Aronov conducted the affairs of the Ready Rx enterprise (i.e., creating and submitting fraudulent No-Fault claims) through a pattern of mail fraud racketeering activity during the course of this scheme.

73.     Ready Rx participated in prohibited prescription referral arrangements in violation of 8 N.Y.C.R.R. § 29.1 and Public Health Law §§ 238-a and 238-d.

74.     Ready Rx also billed for fraudulent prescription and non-prescription drugs.

75.     Ready Rx was never lawfully entitled to collect No-Fault payments under New York Insurance Law § 5102.

76.     Ready Rx damaged Liberty Mutual by submitting fraudulent No-Fault claims and then collecting payments from Liberty Mutual on those claims.

4.    **Top Choice Pharmacy Corp.**

77.    Top Choice is a domestic business corporation organized under the laws of the State of New York.

78.    Defendants Fakhaylev, G. Davidov, and D. Davidov purchased 100% of Top Choice's outstanding common stock on or about November 12, 2018.

79.    Top Choice initially maintained its principal place of business at 65-05 Myrtle Avenue in Glendale, New York following the stock purchase by Fakhaylev, G. Davidov and D. Davidov.

80.    Top Choice eventually moved its principal place of business to 97-06 Queens Boulevard in Rego Park, New York in or around October 2019.

81.    Defendants Fakhaylev, G. Davidov, and D. Davidov owned Top Choice from November 12, 2018 through the present.

82.    Defendants Fakhaylev, G. Davidov, and D. Davidov participated in the operation and management of Top Choice

83.    As set out below, Top Choice was acquired and infiltrated by Fakhaylev, G. Davidov, and D. Davidov, and then used as an enterprise for the purpose of running a No-Fault fraud scheme.

84.    Fakhaylev, G. Davidov, and D. Davidov conducted the affairs of the Top Choice enterprise (i.e., creating and submitting fraudulent No-Fault claims) through a pattern of mail fraud racketeering activity during the course of this scheme.

85.    Top Choice caused the dissemination of prescription forms in violation of New York Education Law § 6810.

86.    Top Choice participated in prohibited prescription referral arrangements in violation of 8 N.Y.C.R.R. § 29.1 and Public Health Law §§ 238-a and 238-d.

87.    Top Choice also billed for fraudulent prescription and non-prescription drugs.

88.    Top Choice was never lawfully entitled to collect No-Fault payments under New York Insurance Law § 5102.

89.    Top Choice damaged Liberty Mutual by submitting fraudulent No-Fault claims and then collecting payments from Liberty Mutual on those claims.

### 5.    Leader Rx Pharmacy LLC

90.    Leader Rx is a domestic limited liability company organized under the laws of the State of New York.

91.    Leader Rx maintained its principal place of business at 63-46 108th Street in Forest Hills, New York during the relevant period.

92.    Defendant Aronov was a member of Leader Rx during the relevant period.

93.    Defendant Aronov participated in the operation and management of Leader Rx during the relevant period.

94.    As set out below, Leader Rx was infiltrated by Aronov and used as an enterprise for the purpose of running a No-Fault fraud scheme.

95.    Aronov conducted the affairs of the Leader Rx enterprise (i.e., creating and submitting fraudulent No-Fault claims) through a pattern of mail fraud racketeering activity during the course of this scheme.

96.    Leader Rx participated in prohibited prescription referral arrangements in violation of 8 N.Y.C.R.R. § 29.1 and Public Health Law §§ 238-a and 238-d.

97.    Leader Rx also billed for fraudulent prescription and non-prescription drugs.

98.    Leader Rx was never lawfully entitled to collect No-Fault payments under New York Insurance Law § 5102.

99.    Leader Rx damaged Liberty Mutual by submitting fraudulent No-Fault claims and then collecting payments from Liberty Mutual on those claims.

### 6.    Petr Yakubovich Fakhlayev

100.    Fakhlayev resides in and is a citizen of the State of New York.

101.    Fakhaylev is a licensed pharmacist in the State of New York.

102.    Fakhaylev was a co-owner and co-member of Atlas Pharmacy during the relevant period.

103.    Fakhaylev participated in the operation and management of Atlas Pharmacy during the relevant period by (a) owning Atlas Pharmacy, (b) serving as Atlas Pharmacy's supervising pharmacist, (c) facilitating unlawful prescription referral arrangements between Atlas Pharmacy and prescribers, and (d) causing Atlas Pharmacy to submit fraudulent No-Fault benefit claims to Liberty Mutual.

104.    Fakhaylev was a co-owner and co-member of Custom Rx during the relevant period.

105.    Fakhaylev participated in the operation and management of Custom Rx during the relevant period by (a) owning Custom Rx, (b) facilitating unlawful prescription referral arrangements between Custom Rx and prescribers, and (c) causing Custom Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

106.    Fakhaylev was a co-owner of Top Choice during the relevant period.

107.    Fakhaylev participated in the operation and management of Top Choice during the relevant period by (a) owning Top Choice, (b) facilitating unlawful prescription referral

arrangements between Top Choice and prescribers, and (c) causing Top Choice to submit fraudulent No-Fault benefit claims to Liberty Mutual.

108.    Fakhaylev caused Atlas Pharmacy, Custom Rx, and Top Choice to aggressively seek and collect payments from Liberty Mutual under New York's No-Fault laws for medically unnecessary medications.

109.    Therefore, Fakhaylev is responsible for the fraudulent billing that Atlas Pharmacy, Custom Rx, and Top Choice submitted to Liberty Mutual seeking payment under New York's No-Fault laws during the relevant period.

### 7.    **Georgiy Davidov**

110.    G. Davidov resides in and is a citizen of the State of New York.

111.    G. Davidov is a licensed pharmacist in the State of New York.

112.    G. Davidov was a co-owner and co-member of Atlas Pharmacy during the relevant period.

113.    G. Davidov participated in the operation and management of Atlas Pharmacy during the relevant period by (a) owning Atlas Pharmacy, (b) serving as a pharmacist for Atlas Pharmacy, including Atlas Pharmacy's original supervising pharmacist, (c) facilitating unlawful prescription referral arrangements between Atlas Pharmacy and prescribers, and (d) causing Atlas Pharmacy to submit fraudulent No-Fault benefit claims to Liberty Mutual.

114.    G. Davidov was a co-owner of Top Choice during the relevant period.

115.    G. Davidov participated in the operation and management of Top Choice during the relevant period by (a) owning Top Choice, (b) facilitating unlawful prescription referral arrangements between Top Choice and prescribers, and (c) causing Top Choice to submit fraudulent No-Fault benefit claims to Liberty Mutual.

116.    G. Davidov caused Atlas Pharmacy and Top Choice to aggressively seek and collect payments from Liberty Mutual under New York's No-Fault laws for medically unnecessary medications.

117.    Therefore, G. Davidov is responsible for the fraudulent billing that Atlas Pharmacy and Top Choice submitted to Liberty Mutual seeking payment under New York's No-Fault laws during the relevant period.

### 8.    <u>David Davidov</u>

118.    D. Davidov resides in and is a citizen of the State of New York.

119.    D. Davidov is not a licensed pharmacist.

120.    D. Davidov was a co-owner and co-member of Atlas Pharmacy during the relevant period.

121.    D. Davidov participated in the operation and management of Atlas Pharmacy during the relevant period by (a) owning Atlas Pharmacy, (b) working as a driver for Atlas Pharmacy, (c) facilitating unlawful prescription referral arrangements between Atlas Pharmacy and prescribers, and (d) causing Atlas Pharmacy to submit fraudulent No-Fault benefit claims to Liberty Mutual.

122.    D. Davidov was a co-owner of Top Choice during the relevant period.

123.    D. Davidov participated in the operation and management of Top Choice during the relevant period by (a) owning Top Choice, (b) facilitating unlawful prescription referral arrangements between Top Choice and prescribers, and (c) causing Top Choice to submit fraudulent No-Fault benefit claims to Liberty Mutual.

124.    D. Davidov caused Atlas Pharmacy and Top Choice to aggressively seek and collect payments from Liberty Mutual under New York's No-Fault laws for medically unnecessary medications.

125.    Therefore, D. Davidov is responsible for the fraudulent billing that Atlas Pharmacy and Top Choice submitted to Liberty Mutual seeking payment under New York's No-Fault laws during the relevant period.

### 9.    **Albert Pinkhasov**

126.    Pinkhasov resides in and is a citizen of the State of New York.

127.    Pinkhasov is a licensed pharmacist in the State of New York.

128.    Pinkhasov was a co-owner and co-member of Custom Rx during the relevant period.

129.    Pinkhasov participated in the operation and management of Custom Rx during the relevant period by (a) owning Custom Rx, (b) serving as Custom Rx's supervising pharmacist, (c) facilitating unlawful prescription referral arrangements between Custom Rx and prescribers, and (d) causing Custom Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

130.    Pinkhasov was also a co-owner and co-member of Ready Rx during the relevant period.

131.    Pinkhasov participated in the operation and management of Ready Rx during the relevant period by (a) owning Ready Rx, (b) facilitating unlawful prescription referral arrangements between Ready Rx and prescribers, and (c) causing Ready Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

132.    Pinkhasov caused Custom Rx and Ready Rx to aggressively seek and collect payments from Liberty Mutual under New York's No-Fault laws for medically unnecessary medications.

133.    Therefore, Pinkhasov is responsible for the fraudulent billing that Custom Rx and Ready Rx submitted to Liberty Mutual seeking payment under New York's No-Fault laws during the relevant period.

### 10.    Igor Aronov

134.    Aronov resides in and is a citizen of the State of New York.

135.    Aronov is a licensed pharmacist in the State of New York.

136.    Aronov was a co-owner and co-member of Custom Rx during the relevant period.

137.    Aronov participated in the operation and management of Custom Rx during the relevant period by (a) owning Custom Rx, (b) facilitating unlawful prescription referral arrangements between Custom Rx and prescribers, and (c) causing Custom Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

138.    Aronov was also a co-owner and co-member of Ready Rx during the relevant period.

139.    Aronov participated in the operation and management of Ready Rx during the relevant period by (a) owning Ready Rx, (b) serving as Ready Rx's supervising pharmacist, (c) facilitating unlawful prescription referral arrangements between Ready Rx and prescribers, and (d) causing Ready Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

140.    Aronov was also the owner and member of Leader Rx during the relevant period.

141.    Aronov participated in the operation and management of Leader Rx during the relevant period by (a) owning Leader Rx, (b) facilitating unlawful prescription referral

arrangements between Leader Rx and prescribers, and (c) causing Leader Rx to submit fraudulent No-Fault benefit claims to Liberty Mutual.

142.    Aronov caused Custom Rx, Ready Rx, and Leader Rx to aggressively seek and collect payments from Liberty Mutual under New York's No-Fault laws for medically unnecessary medications.

143.    Therefore, Aronov is responsible for the fraudulent billing that Custom Rx, Ready Rx, and Leader Rx submitted to Liberty Mutual seeking payment under New York's No-Fault laws during the relevant period.

## III.    JURISDICTION AND VENUE

144.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

145.    Supplemental jurisdiction over the Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

146.    Venue is proper under 28 U.SC. § 1391(b)(2) whereas the vast majority of the acts known to Liberty Mutual alleged herein were carried out within the Eastern District of New York.

147.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws.

148.    The Defendants' activities in and contacts with New York were purposely sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

149.    As the allegations contained in the within Complaint arise from the Defendants' fraudulent demands for payment under the No-Fault laws of New York, there is no question that

there exists a substantial relationship between the transactions at issue and Liberty Mutual's causes of action.

## IV.   NO-FAULT LAWS AND RELEVANT LICENSING STATUTES

### A.   GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

150.   Liberty Mutual underwrites automobile insurance in the State of New York.

151.   New York's No-Fault laws are designed to ensure that injured victims of automobile accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services, including prescription drugs.

152.   Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq*.), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq*.) (collectively, "the No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Liberty Mutual claimants.

153.   Under New York's No-Fault laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of an automobile.

154.   "Basic economic loss" is defined to include "all necessary expenses" for prescription drug services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

155.   No-Fault benefits include at least $50,000.00 per Liberty Mutual claimant for necessary expenses that are incurred for healthcare goods and services, including prescription drugs.

### B.   ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

156.   Pharmacies are not eligible to collect payment under New York's No-Fault laws if they fail "to meet **any** applicable New York State or local licensing requirement necessary to perform such services in New York."  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

157.    New York's Education Law applies to pharmacies.  *See* N.Y. Educ. Law § 6800, *et seq*.

158.    Under New York Education Law § 6808, no person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling or manufacturing, or shall offer drugs, prescriptions or poisons for sale at retail or wholesale unless registered by the New York State Department of Education as a pharmacy, wholesaler, manufacturer or outsourcing facility.

### 1.    Duties of Pharmacies and Their Owners

159.    Pharmacy owners and supervising pharmacists "shall be responsible for the proper conduct of [the] pharmacy."  N.Y. Educ. Law § 6808(2)(e).

160.    "No pharmacist shall have personal supervision of more than one pharmacy at the same time."  *Id.*

161.    Only a licensed pharmacist or pharmacy intern may perform professional pharmacy services.  *See* 8 N.Y.C.R.R. § 63.6; 8 N.Y.C.R.R. § 29.7(21).

162.    Pursuant to 8 N.Y.C.R.R. § 63.6(b)(7), "[p]harmacists or pharmacy interns shall conduct a prospective drug review before each prescription is dispensed or delivered to the patient," which "review shall include screening for potential drug therapy problems due to therapeutic duplication, drug-drug interactions, including serious interactions with over-the-counter drugs, incorrect drug dosage or duration of drug treatment, drug-allergy interactions, and clinical abuse or misuse."

163.    With regard to both off-premises and on-premises deliveries of drugs and medications, nothing in either delivery scenario "shall prevent a pharmacist or pharmacy intern from refusing to dispense a prescription if, in his or her professional judgment, potential adverse

effects, interactions or other therapeutic complications could endanger the health of the patient." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(e), § 63.6(b)(8)(ii)(d)(5).

164.    For a drug or medication that is delivered on the pharmacy's premises, before dispensing a medication to a new patient or a new medication to an existing patient, the pharmacist or pharmacy intern must personally counsel the patient by telephone or in person on appropriate matters, including known indications, common adverse side effects or interactions, and therapeutic contraindications.  8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)-(b).

165.    When dispensing a drug or medication to a patient off of pharmacy premises, the pharmacist or pharmacy intern must "include with each prescription a written offer to counsel the patient" regarding the drug or medication, including its "known indications" and "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered." 8 N.Y.C.R.R. § 63.6(b)(8)(i)(a)(1), (4), § 63.6(b)(8)(ii)(a).

166.    The written offer of counseling for drugs dispensed off of pharmacy premises "shall provide a telephone number at which a licensed pharmacist or pharmacy intern may be readily reached."  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(a).

167.    When dispensing a drug or medication to a patient off of pharmacy premises, if a pharmacist or pharmacy intern determines that the prescription(s) present "potential drug therapy problems which could endanger the health of the patient," such as "therapeutic duplications, drug-drug interactions and drug-allergy interactions," the pharmacist or pharmacy intern "shall personally contact the patient" either by phone or in person to "offer counseling on the identified potential drug therapy problems" and other issues that the pharmacist or pharmacy intern deems appropriate in their judgment.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d), (1).

168.     The responsibility of offering counseling to patients in these situations "shall not be delegated to an individual not authorized to practice pharmacy under a license or limited permit."  8 N.Y.C.R.R. § 68.6(b)(8)(ii)(d)(2).

169.     If the patient refuses to accept counseling, such refusal must be documented.  8 N.Y.C.R.R. § 63.6(b)(8)(ii)(d)(4).

170.     An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, and thus cannot "interpret and evaluate a prescription for conformance with legal requirements, authenticity, accuracy and interaction of the prescribed drug with other known prescribed and over-the-counter drugs," cannot "sign or initial any record of dispensing required to be maintained by law," and cannot "counsel patients."  8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(2), (5), (6), (7).

171.     Aiding and abetting an unlicensed person to practice a profession, including pharmacy, is considered a crime.  N.Y. Educ. Law § 6512.

### 2.     Unlawful Prescription Referral Arrangements

172.     New York law prohibits registered pharmacies from exploiting patients for financial gain.  8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting registered pharmacies from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

173.     New York law prohibits registered pharmacies from engaging in unlawful referral relationships.  *Id.* at § 29.1(b)(3) (prohibiting registered pharmacies from "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or

from a third party for the referral of a patient or client or in connection with the performance of professional services.").

174.    New York Education Law § 6509-a prohibits a professional licensee, including a licensed pharmacist, from "directly or indirectly" requesting, receiving, or participating in the division, transference, assignment, rebate, splitting or refunding of a fee in connection with professional care or services related to drugs and/or medications.

175.    Likewise, under New York Public Health Law § 238-a, a practitioner authorized to order pharmacy services may not make a referral for such services to a healthcare provider authorized to provide such services, including to pharmacies, where such practitioner has a financial relationship with such healthcare provider.    A financial relationship includes a compensation agreement and includes an arrangement with a healthcare provider that is in excess of fair market value or that provides compensation that varies directly or indirectly based on the volume or value of any referrals or business between the parties.    N.Y. Pub. Health Law § 238-a(1), (5); *see also* N.Y. Educ. Law § 6530(18) (defining professional misconduct of physicians and physician assistants to include "[d]irectly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services"); N.Y. Educ. Law § 6530(38) (defining professional misconduct of physicians and physician assistants to include "[e]ntering into an arrangement or agreement with a pharmacy for the compounding and/or dispensing of coded or specially marked prescriptions").

176.    It is a crime for "[a]ny person to enter into an agreement with a physician…for the compounding or dispensing of secret formula (coded) prescriptions."  N.Y. Educ. Law § 6811.

### 3.    Electronic Prescription Mandate

177.    New York law requires electronic prescriptions for both controlled and non-controlled substances.  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

178.    The electronic prescription mandate was intended to reduce prescription drug fraud and misuse.  *See* N.Y. Senate Bill S7637 (2011-2012 Leg. Session) (explaining how "E-prescribing is a secure method of transmitting prescriptions from practitioners to pharmacists. Since an e-prescription cannot be physically altered, forged, or stolen …, it curtails prescription fraud.").

179.    There are few exceptions to the electronic prescription mandate, such as when electronic prescribing is not available due to temporary technological or electrical failure, where the prescribing provider has obtained a waiver, or where drugs cannot be prescribed electronically in a timely manner (and such delay would adversely impact the patient's medical condition).  N.Y. Educ. Law § 6810(10); N.Y. Pub. Health Law § 281(3).

180.    If a prescription is not issued electronically, then the prescribing provider must indicate in the patient's health record the reason that the prescription was not issued electronically.  N.Y. Educ. Law § 6810(11)-(12).

181.    If the prescriber has obtained a waiver from the New York Department of Health because of "exceptional circumstances," then the prescriptions must be issued using an Official New York State Prescription Form or an oral prescription in accordance with New York law. N.Y. Educ. Law § 6810(10)(c); N.Y. Pub. Health Law § 281(3).

182.    Absent one of these limited exceptions, prescribing providers must prescribe all drugs and medications electronically.

### C.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

183.    Claimants can assign their No-Fault benefits directly to pharmacies.

184.   Under a duly executed assignment, a claimant's pharmacy may submit claims directly to an insurance company and receive payment for necessary pharmacy services rendered. 11 N.Y.C.R.R. § 65.3-11(a).

185.   Pharmacies can submit claims using the claim form required by the New York State Department of Financial Services f/k/a New York State Department of Insurance ("DOI") (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").  11 N.Y.C.R.R. § 65.3-11(b).

186.   Alternatively, pharmacies may submit claims to insurance carriers using the Health Insurance Claim Form (known as the "CMS-1500" form and formerly known as the "HCFA-1500" form).

187.   NF-3 and CMS-1500 forms are important because they certify that the pharmacy's request for payment is not materially false, misleading, or fraudulent, subject to the following warning:

> "Any person who knowingly and with intent to defraud any insurance company or other persons files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime[.]"

N.Y. Ins. Law § 403(d).

188.   Pharmacies make material misrepresentations when they submit NF-3 or CMS-1500 forms that omit or misrepresent material information about the billed-for services or the pharmacies' eligibility to collect No-Fault payments.

189.   It is a material misrepresentation to submit NF-3 or CMS-1500 forms for prescription drugs that (a) are never provided, (b) are not necessary, (c) are referred to the pharmacy pursuant to unlawful arrangements with prescribing providers, (d) are dispensed without

required supervision or regard for patient safety and well-being, and/or (e) are billed at a greater monetary charge than is permitted under the applicable fee schedule.

### D. REIMBURSEMENT FOR PRESCRIPTION DRUGS UNDER NEW YORK'S NO-FAULT LAWS

190.    A pharmacy's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

191.    The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

192.    The Fee Schedule applicable to pharmacies and prescription drugs is set forth under 12 N.Y.C.R.R. § 440.1, *et seq*.

193.    For charges submitted by pharmacies for brand name and generic prescription drugs or medicines, 12 N.Y.C.R.R. § 440.5(a)(1)(ii) provides that a provider may charge no more than, as applicable here, the lesser of the calculated cost or the usual and customary price for the prescription drug or medication.

194.    "Calculated cost means the average wholesale price for the national drug code of the prescription drug or medicine on the day it was dispensed plus a dispensing fee. For brand name drugs the Calculated cost shall be AWP minus twelve percent of the Average Wholesale price plus a dispensing fee of four dollars. For generic drugs the Calculated cost shall be AWP minus twenty percent plus a dispensing fee of five dollars."  12 N.Y.C.R.R. § 440.2(c).

195.    The NDC is a unique 10-digit, 3-segment numeric identifier assigned to each drug that reflects the vendor of the drug, identifies the drug itself, and indicates the quantity in which the drug is packaged.  Each NDC number has a corresponding AWP, which identifies the price.

196.    AWP means the average wholesale price of a prescription drug as provided in the most current release of the Red Book published by Thomson Reuters or Medi-Span Master Drug Database by Wolters Kluwer Health, or any successor publisher, on the day a drug is dispensed. 12 N.Y.C.R.R. § 440.2(a).

197.    "Usual and customary price means the retail price charged to the general public for a prescription drug." 12 N.Y.C.R.R. § 440.2(s).

198.    Under New York's No-Fault laws, healthcare providers, including pharmacies, are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

199.    Additionally, New York's No-Fault laws expressly provide that "[a] provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet **any** applicable New York State or local licensing requirement necessary to perform such service in New York." *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

200.    Accordingly, if a professional healthcare service provider, including a pharmacy, fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

201.    As alleged herein, the Defendants failed to meet several laws and regulations when providing pharmacy services to claimants during the course of this scheme; therefore, the Pharmacy Defendants were never eligible to collect No-Fault payments from Liberty Mutual.

## V.  SPECIFIC FACTS ABOUT THE DEFENDANTS' SCHEME TO DEFRAUD

### A.  NEXUS AMONG THE DEFENDANTS

202.   There are demonstrable connections among Atlas Pharmacy, Custom Rx, Ready Rx, Top Choice, and Leader Rx (and their owners) despite their outward appearance as independent pharmacies.

203.   Indeed, as explained below, the Pharmacy Defendants were not actually stand-alone entities, but, for instance, shared at least one common owner with one or more of the other Pharmacy Defendants, shared patients, shared Prescribing Providers, and used identical forms and Documentation.

204.   Taken together, these connections reveal that the Defendants used the Pharmacy Defendants to execute this scheme.

#### 1.  Defendants' Litigation History

205.   The Defendants' connection to criminal conduct is accompanied by a string of lawsuits alleging No-Fault fraud:

a.   *Gov't Empls. Ins. Co. v. Custom RX Pharmacy, LLC*, No. 1:20-cv-02622-CBA-SJB (E.D.N.Y.) (Aronov and Pinkhasov were accused of using Custom Rx to conduct a No-Fault fraud scheme that involved "invalid and illegal" prescription forms and "forged or altered" claim documentation);

b.   *Gov't Empls. Ins. Co. v. Atlas Pharmacy, LLC*, No. 1:20-cv-03643-RRM-PK (E.D.N.Y.) (Fakhaylev and G. Davidov were accused of operating Atlas Pharmacy as part of a "large-scale fraudulent scheme" that involved billing for "medically unnecessary prescriptions" that "targeted a specific set of pharmaceutical products" (i.e., Topical Pain Products); the scheme also involved "illegal, collusive agreements" with prescribers, and billing for "illegal, invalid and duplicitous prescriptions.");

c.   *Gov't Empls. Ins. Co. v. Ready Rx, LLC*, No. 1:21-cv-04765-DG-RER (E.D.N.Y.) (Aronov and Pinhasov are accused again of using a pharmacy—this time Ready Rx—to conduct a No-Fault fraud scheme that intentionally targeted a specific set of pharmaceutical products" that were "medically unnecessary" and "dispensed pursuant to predetermined fraudulent protocols.");

d.   *Gov't Empls. Ins. Co. v. Top Choice Pharmacy Corp.*, No. 1:22-cv-02875-MKB-TAM (E.D.N.Y.) (Fakhaylev, G. Davidov, and D. Davidov are accused of perpetrating a "massive, ongoing fraudulent scheme" though Top Choice that "focused on a limited set of pharmaceutical products," consisting primarily of topical lidocaine and topical diclofenac, which unnecessary and falsely charged products were prescribed pursuant to illegal, collusive agreements between the Defendants and the prescribing providers.).

206.    The *Custom Rx*, *Atlas Pharmacy*, *Ready Rx*, and *Top Choice* actions are relevant to this matter because they involve the same pharmacies and the same pattern of fraudulent billing that was used to defraud Liberty Mutual.

## 2.    **Common Ownership**

207.    Fakhaylev, G. Davidov, and D. Davidov owned both Atlas Pharmacy and Top Choice during the relevant period.

208.    Atlas Pharmacy operated at 92-13 Jamaica Avenue, Woodhaven, New York during the relevant period.

209.    A true and accurate picture of the exterior of Atlas Pharmacy at 92-13 Jamaica Avenue, Woodhaven, New York is depicted below:



210.    Top Choice operated at 97-06 Queens Boulevard, Rego Park, New York during the relevant period.

211.    A true and accurate picture of the exterior of Top Choice at 97-06 Queens Boulevard, Rego Park, New York is depicted below:



212.    Fakhaylev also has close ties to Ready Rx—also owned by Pinkhasov and Aronov—even though he is not listed or disclosed as an owner.

213.    Ready Rx operated at 95-16 Queens Boulevard, Rego Park, New York during the relevant period.

214.    A true and accurate picture of the exterior of Ready Rx at 95-16 Queens Boulevard, Rego Park, New York is depicted below:



215.    Fakhaylev was an owner of Custom Rx during a portion of the relevant period, along with Pinkhasov and Aronov, until he abruptly resigned as an LLC member in early March 2020.

216.    Custom Rx operated at 102-03A Queens Boulevard, Forest Hills, New York during the relevant period.

217.    A true and accurate picture of the exterior of Custom Rx at 102-03A Queens Boulevard, Forest Hills, New York is depicted below:



218.    Leader Rx is owned by Aronov, who also has ownership in Custom Rx and Ready Rx, both of which are or have been affiliated with Fakhaylev.

219.    Leader Rx operated at 63-46 108th Street, Forest Hills, New York during the relevant period.

220.    A true and accurate picture of the exterior of Leader Rx at 63-46 108th Street, Forest Hills, New York is depicted below:



221.    On June 14, 2023, Aronov admitted to a Liberty Mutual investigator that Leader

Rx is a successor pharmacy to Custom Rx that he started after the location of Custom Rx—across

the street from Leader Rx—was closed.

222.    Aronov claims that delays between prescriptions and delivery of the drugs by

Custom Rx and Leader Rx was due to clerical errors caused by his billing company.

223.    However, Evelyn Brobbey, N.P. (a referring provider of Custom Rx) admitted to a

Liberty Mutual investigator on June 12, 2023 that she has heard from patients that did not receive

their prescribed medication or that Custom Rx dispensed and/or delivered the prescribed

medication extremely late.

224.    Despite repeated attempts to obtain the Pharmacy Defendants examination under oath testimony to verify billing submitted to Liberty Mutual, Atlas Pharmacy, Ready Rx, Top Choice, and Leader Rx all failed to appear in violation of New York laws and regulations.

225.    The Pharmacy Defendants all utilized Xpress Rx Delivery to deliver Topical Pain Products to Liberty Mutual claimants.

226.    A true and accurate copy of the pamphlet distributed by Xpress Rx Delivery is depicted below:



### 3. **Common Customers**

227. The Pharmacy Defendants were closely situated in Queens, New York.

228.    Despite Atlas Pharmacy, Custom Rx, Ready Rx, Top Choice, and Leader Rx being located close together in Queens, they billed claimants—sometimes the same claimant—who lived outside of the Queens neighborhood that the Pharmacy Defendants purported to serve.

229.    Indeed, claimants often lived many miles away from Queens, including the following:

| Claim No. | Claimant Initials | Pharmacy Defendant | Claimant City | Approximate Miles From Pharmacy |
|---|---|---|---|---|
| 0380908320003 | P.C. | ATLAS PHARMACY | Syracuse, NY | 272.0 |
| 0414938630001 | T.H. | ATLAS PHARMACY | Mastic, NY | 59.1 |
| 0345304900001 | G.W. | ATLAS PHARMACY | Bellport, NY | 55.1 |
| 0411458290001 | M.S. | ATLAS PHARMACY | South Salem, NY | 54.4 |
| 0398732310005 | L.O. | ATLAS PHARMACY | West Haverstraw, NY | 49.0 |
| 0422253770001 | W.L. | ATLAS PHARMACY | Smithtown, NY | 45.0 |
| 0390552310002 | A.A. | ATLAS PHARMACY | Brentwood, NY | 40.6 |
| 0419912050001 | L.K. | ATLAS PHARMACY | White Plains, NY | 30.1 |
| 0329007880001 | E.O. | ATLAS PHARMACY | Staten Island, NY | 25.9 |
| 0379351690003 | M.C. | ATLAS PHARMACY | Yonkers, NY | 24.6 |
| 0484882870001 | K.S. | CUSTOM RX | Rochester, NY | 349.0 |
| 0502383300001 | B.T. | CUSTOM RX | Johnson City, NY | 195.0 |
| 0515444320003 | A.F. | CUSTOM RX | Albany, NY | 158.0 |
| 0414810960004 | M.J. | CUSTOM RX | Middletown, NY | 76.0 |
| 0449086690001 | E.S. | CUSTOM RX | Mastic Beach, NY | 61.5 |
| 0409970330001 | R.D. | CUSTOM RX | Port Jefferson Station, NY | 53.6 |
| 0511097600001 | E.J. | CUSTOM RX | Selden, NY | 51.8 |
| 0424187580005 | V.B. | CUSTOM RX | East Islip, NY | 46.2 |
| 0563973330001 | E.M. | CUSTOM RX | Bay Shore, NY | 40.6 |
| 0436802230002 | H.P. | CUSTOM RX | Long Beach, NY | 35.3 |
| 0520867740001 | K.K. | LEADER RX | Commack, NY | 35.1 |
| 0551440560002 | Y.O. | LEADER RX | Freeport, NY | 26.2 |
| 0569711460001 | S.T. | LEADER RX | Staten Island, NY | 25.6 |
| 0524341350001 | M.I. | LEADER RX | Hempstead, NY | 19.6 |
| 0508012500001 | J.C. | LEADER RX | Hewlett, NY | 18.6 |
| 0522763380001 | E.S. | LEADER RX | Brighton Beach, NY | 15.7 |
| 0508500080001 | F.H. | LEADER RX | Great Neck, NY | 14.9 |
| 0522676860001 | J.H. | READY RX | Johnson City, NY | 201.0 |
| 0469667190001 | S.B. | READY RX | Troy, NY | 168.0 |
| 0452712370002 | L.M. | READY RX | Albany, NY | 161.0 |
| 0384821480001 | L.G. | READY RX | Poughkeepsie, NY | 81.7 |
| 0414810960004 | M.J. | READY RX | Middletown, NY | 81.5 |

| Claim No. | Claimant Initials | Pharmacy Defendant | Claimant City | Approximate Miles From Pharmacy |
|---|---|---|---|---|
| 0416479810001 | C.S. | READY RX | Beacon, NY | 80.9 |
| 0452479050001 | B.O. | READY RX | Salisbury Mills, NY | 73.6 |
| 0502939210001 | B.P. | READY RX | Newburgh, NY | 72.6 |
| 0508125180001 | E.M. | READY RX | New Windsor, NY | 70.2 |
| 0473441630001 | M.M. | READY RX | Monroe, NY | 65.8 |
| 0434605410001 | S.B. | TOP CHOICE | Utica, NY | 250.0 |
| 0429653510003 | J.J. | TOP CHOICE | Albany, NY | 161.0 |
| 0452841460004 | P.T. | TOP CHOICE | Wappingers Falls, NY | 81.2 |
| 0409581430001 | A.B. | TOP CHOICE | Middletown, NY | 76.1 |
| 0401784940001 | H.D. | TOP CHOICE | Bellport, NY | 54.6 |
| 0410521500005 | F.R. | TOP CHOICE | Bay Shore, NY | 42.5 |
| 0421133880005 | C.M. | TOP CHOICE | Spring Valley, NY | 40.4 |
| 0445909650004 | M.P. | TOP CHOICE | Wyandanch, NY | 31.4 |
| 0422958320001 | S.R. | TOP CHOICE | Massapequa NY | 28.7 |
| 0441823360001 | M.P. | TOP CHOICE | Freeport, NY | 26.2 |

230.    There are no legitimate reasons why these claimants would choose to be served by pharmacies located far away from their homes, especially when the same drugs could be obtained at many other retail pharmacy.

231.    Claimants therefore did not have a choice of pharmacy to fill their prescriptions.

232.    Similarly, there are no legitimate reasons why claimants would be served by more than one of the Pharmacy Defendants unless collusive relationships and coordinated efforts were undertaken by the Pharmacy Defendants and Prescribing Providers.

233.    However, the Pharmacy Defendants routinely submitted bills to Liberty Mutual that shared the same claimants in connection with the same claim, including the following:

| Claim No. | Claimant Initials | Pharmacy Defendants |
|---|---|---|
| 0366024700001 | D.Y. | Custom Rx Top Choice |
| 0369433510002 | E.O. | Atlas Pharmacy Custom Rx |
| 0379676090005 | J.M. | Atlas Pharmacy Custom Rx |

| Claim No. | Claimant Initials | Pharmacy Defendants |
|---|---|---|
| 0392586460005 | L.F. | Atlas Pharmacy<br>Top Choice |
| 0393529500006 | K.O. | Atlas Pharmacy<br>Top Choice |
| 0397265100002 | B.T. | Custom Rx<br>Ready Rx |
| 0400889900001 | K.F. | Custom Rx<br>Top Choice |
| 0402618020009 | S.V. | Custom Rx<br>Ready Rx |
| 0402698900005 | T.P. | Atlas Pharmacy<br>Top Choice |
| 0405447190002 | F.F. | Atlas Pharmacy<br>Custom Rx |
| 0405749050011 | L.L. | Custom Rx<br>Ready Rx |
| 0406135690004 | N.C. | Atlas Pharmacy<br>Top Choice |
| 0406363510008 | E.M. | Atlas Pharmacy<br>Top Choice |
| 0406363510009 | A.L. | Atlas Pharmacy<br>Top Choice |
| 0407395500001 | K.B. | Custom Rx<br>Ready Rx |
| 0410677300001 | R.W. | Custom Rx<br>Top Choice |
| 0411039930001 | I.R. | Custom Rx<br>Ready Rx |
| 0413954750002 | S.Y. | Custom Rx<br>Ready Rx |
| 0413954750004 | B.Y. | Custom Rx<br>Ready Rx |
| 0414118970003 | S.C. | Custom Rx<br>Ready Rx<br>Top Choice |
| 0414810960004 | M.J. | Custom Rx<br>Ready Rx<br>Top Choice |
| 0421052900008 | A.S. | Custom Rx<br>Top Choice |
| 0423827370004 | S.E. | Atlas Pharmacy<br>Top Choice |
| 0424443670002 | B.A. | Atlas Pharmacy<br>Top Choice |

| Claim No. | Claimant Initials | Pharmacy Defendants |
|---|---|---|
| 0424783290003 | T.W. | Custom Rx<br>Top Choice |
| 0424839360001 | N.A. | Atlas Pharmacy<br>Top Choice |
| 0425580380005 | D.W. | Atlas Pharmacy<br>Top Choice |
| 0425580380006 | R.R. | Atlas Pharmacy<br>Top Choice |
| 0429359090001 | A.L. | Atlas Pharmacy<br>Top Choice |
| 0429433210003 | E.C. | Ready Rx<br>Top Choice |
| 0429433210005 | Y.P. | Ready Rx<br>Top Choice |
| 0429442940007 | A.J. | Custom Rx<br>Ready Rx |
| 0430234930002 | B.A. | Atlas Pharmacy<br>Top Choice |
| 0430300170004 | J.W. | Atlas Pharmacy<br>Top Choice |
| 0430751890001 | J.M. | Ready Rx<br>Top Choice |
| 0430771710007 | M.D. | Ready Rx<br>Top Choice |
| 0431245510005 | K.U. | Ready Rx<br>Top Choice |
| 0431517980001 | D.V. | Ready Rx<br>Top Choice |
| 0432995340003 | R.B. | Atlas Pharmacy<br>Top Choice |
| 0434060190001 | Y.R. | Ready Rx<br>Top Choice |
| 0435985500008 | A.L. | Custom Rx<br>Ready Rx |
| 0436119960001 | L.D. | Atlas Pharmacy<br>Top Choice |
| 0437186620003 | G.M. | Atlas Pharmacy<br>Top Choice |
| 0438817530003 | J.W. | Custom Rx<br>Ready Rx |
| 0443017910007 | D.S. | Custom Rx<br>Ready Rx |
| 0445413420003 | S.B. | Custom Rx<br>Ready Rx |

| Claim No. | Claimant Initials | Pharmacy Defendants |
|---|---|---|
| 0449139920001 | R.A. | Custom Rx Ready Rx |
| 0451473300002 | R.A. | Custom Rx Ready Rx |
| 0452049880003 | A.B. | Custom Rx Ready Rx |
| 0458531470001 | E.B. | Custom Rx Ready Rx |
| 0463041270001 | H.J. | Custom Rx Ready Rx |
| 0463142760001 | R.G. | Custom Rx Ready Rx |
| 0463685380001 | M.F. | Custom Rx Ready Rx |
| 0469273010003 | J.P. | Custom Rx Ready Rx |
| 0475796370001 | M.H. | Custom Rx Ready Rx |
| 0476205920001 | N.R. | Custom Rx Ready Rx |
| 0476205920006 | V.U. | Custom Rx Ready Rx |
| 0480687400003 | B.B. | Custom Rx Ready Rx |
| 0491446500007 | K.D. | Custom Rx Ready Rx |
| 0494473830004 | A.F. | Custom Rx Ready Rx |
| 0500543460001 | B.J. | Leader Rx Ready Rx |
| 0522829240001 | K.W. | Custom Rx Leader Rx |
| 0524566210008 | Y.Y. | Leader Rx Ready Rx |
| 0543805820001 | M.S. | Custom Rx Leader Rx |
| 0554605010001 | S.P. | Custom Rx Leader Rx |
| 0558603300001 | G.P. | Custom Rx Leader Rx |
| 0574193250003 | M.J. | Custom Rx Leader Rx |

234.    The Pharmacy Defendants' bills for these claimants were not only fraudulent but they also illustrate the links among all of the Defendants in executing this scheme.

### 4.    Common Connections to Common Prescribers

235.    The Pharmacy Defendants purported to operate as independent pharmacies, yet their bills all involve the same medications prescribed by the same set of medical providers and practices.

236.    The unlikely commonality among the prescribers highlights the relatedness of the Pharmacy Defendants and their shared scheme relying on these common Referring Providers who were willing to enter unlawful referral arrangements with the Pharmacy Defendants.

237.    The prescribers generating prescriptions that were billed to Liberty Mutual by the Pharmacy Defendants worked at No-Fault clinics located all over the New York metropolitan area.

238.    These Referring Providers were logical sources of bogus prescriptions for the Pharmacy Defendants and their owners.

239.    Indeed, several of the most prolific prescribers have been sued in civil lawsuits and named in criminal accusations relating to their participation in similar schemes to defraud:

| Prescriber | Associated Pharmacy Defendant(s) | Prior Healthcare/No-Fault Fraud Action(s) |
|---|---|---|
| Mani Ushyarov, D.O. | Custom Rx<br>Top Choice | • *GEICO v. MSB Rx Corp.*, No. 1:19-cv-000232-NG-PK (E.D.N.Y.) (defendant in No-Fault fraud scheme involving false and fraudulent prescriptions)<br>• *Allstate Ins. Co. v. New Century Pharmacy, Inc.*, No. 1:19-cv-05702-ENV-VMS (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions and false medical billing) |

| Prescriber | Associated Pharmacy Defendant(s) | Prior Healthcare/No-Fault Fraud Action(s) |
|---|---|---|
| | | • *GEICO v. Refill Rx Pharmacy Inc.*, No. 1:18-cv-02823-DLI-PK (E.D.N.Y.) (defendant in No-Fault fraud scheme involving false and fraudulent prescriptions)<br>• *Liberty Mut. Ins. Co. v. Nexray Medical Imaging, P.C.*, No. 1:12-cv-05666-NGG-VMS (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions/referrals and false medical billing)<br>• *GEICO v. New Hyde Park Imaging, P.C.*, No. 1:11-cv-01166-FB-ALC (E.D.N.Y.) (defendant in No-Fault fraud scheme involving false medical billing) |
| Suresh Paulus, D.O. | Custom Rx<br>Ready Rx | • *GEICO v. AZCARE Inc.*, No. 1:20-cv-05312-PKC-RML (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions and illegal kickback payments)<br>• *GEICO v. Big Apple Med. Equip. Inc.*, No. 1:20-cv-05786-PKC-JRC (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions and illegal kickback payments) |
| Mark Gladstein, M.D. | Atlas Pharmacy<br>Top Choice | • *Am. Transit Ins. Co. v. Gladstein*, No. 1:21-cv-00413-MKB-JRC (E.D.N.Y.) (defendant in No-Fault fraud scheme |

| Prescriber | Associated Pharmacy Defendant(s) | Prior Healthcare/No-Fault Fraud Action(s) |
|---|---|---|
| | | involving unnecessary prescriptions and illegal kickbacks) <br> • *GEICO v. Frenkel*, No. 1:20-cv-02391-KAM-VMS (E.D.N.Y.) (defendant in No-Fault fraud scheme involving unnecessary prescriptions and illegal kickbacks) |
| Radha Gara, M.D. | Custom Rx | • *GEICO v. Wellmart RX, Inc.*, No. 1:19-cv-04414-KAM-RLM (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions) |
| Stella Amanze, P.A. | Atlas Pharmacy <br> Top Choice | • *GEICO v. Zaitsev*, No. 1:20-cv-03495-FB-LKE (E.D.N.Y.) (defendant in No-Fault fraud scheme alleged to have to perform medically unnecessary and fraudulent healthcare services) |
| Hong Pak, M.D. | Atlas Pharmacy <br> Custom Rx <br> Top Choice | • *GEICO v. Wallegood, Inc.*, No. 1:21-cv-01986-PKC-RLM (E.D.N.Y.) (defendant in No-Fault fraud scheme involving fraudulent prescriptions for durable medical equipment pursuant to a predetermined protocol and unlawful financial arrangements) |
| Allan Hausknecht, M.D. | Custom Rx <br> Top Choice | • *GEICO v. Progressive Med. Care, P.C.*, No. 2:21-cv-06575-JS-SIL (E.D.N.Y.) (defendant in No-Fault fraud scheme involving false medical billing at multiple clinic locations) |

### 5.    Common Links to Criminal Fraud Scheme

240.    In addition to common prescribers, the Defendants also share numerous connections to other criminal enterprises involving fraudulent pharmacies.

241.    For example, non-parties Peter Khaim ("Khaim") and Arkadiy Khaimov ("Khaimov") orchestrated a massive criminal scheme operated in New York during the relevant period.

242.    Khaim and Khaimov are brothers, and they secretly owned and controlled a large network of medical providers and pharmacies; they have been sued civilly and charged criminally for their involvement in these schemes.

243.    In *United States v. Khaim*, No. 1:20-cr-00580-AMD (E.D.N.Y.). both Khaim and Khaimov were charged with healthcare fraud and money laundering in connection with their secret and illegal ownership of numerous "neighborhood" pharmacies in and around Queens, New York.

244.    On or around November 3, 2022, Khaim pled guilty to conspiracy to commit money laundering. *Id.* on Nov. 3, 2022.

245.    On or around November 16, 2022, Khaimov pled guilty to conspiracy to commit money laundering. *Id.* on Nov. 16, 2022.

246.    On or around April 11, 2024, Khaimov was sentenced to 72 months imprisonment. *Id.* at ECF No. 120.

247.    On or around June 27, 2024. Khaim was sentenced to 97 months imprisonment. *Id.* at ECF No. 134.

248.    Custom Rx and Ready Rx also used the same P.O. Box as numerous other pharmacies, including several pharmacies linked to Khaim and Khaimov.

249.    The Defendants also paid into the same network of sham entities, which, as alleged in *Khaim*, operated as a means to launder money and facilitate illegal kickback and referral payments.

250.    In the matter of *Gov't Empls. Ins. Co. v. Custom Rx Pharmacy, LLC*, No. 1:20-cv-02622-CBA-SJB (E.D.N.Y.), it is alleged that Custom Rx paid over $6.7 million to a group of sham companies; the alleged purpose of the payments was to facilitate and conceal the illegal referrals and kickbacks between the pharmacies and the prescribers. *See id.* at ECF No. 25.

251.    In *Allstate Ins. Co. v. Atlas Pharmacy LLC*, No. 1:22-cv-03817-BMC (E.D.N.Y.), it is alleged that Atlas Pharmacy, Custom Rx, Ready Rx, and Top Choice, by and through their owners, took part in a scheme to defraud Allstate by fulfilling prescriptions for medically unnecessary pain relief drugs, including diclofenac sodium 3% gel, lidocaine 5% ointment, and ineffective pain-relief patches. This push for the expensive drugs rather than their less expensive, more effective alternative was driven by illegal arrangements with medical clinics to prescribe the expensive and medically unnecessary medication.

### 6.    Common Billed-for Drugs and Medications

252.    The Pharmacy Defendants all billed for the same recurring set of Topical Pain Products that were unnecessary, unwarranted, and ineffective.

253.    The Pharmacy Defendants were not legitimate "neighborhood" pharmacies offering a variety of products; instead, they focused on billing for these expensive Topical Pain Products even though substantially similar products were available as over-the-counter drugs at a fraction of the cost.

254.    The vast majority of the bills submitted to Liberty Mutual by the Pharmacy Defendants involve these Topical Pain Products.

255.    The Pharmacy Defendants intentionally targeted and selected particular Topical Pain Products because they could be acquired at a low cost and then billed to Liberty Mutual in terms of the drug's AWP, which allowed the Pharmacy Defendants to realize a profit for every prescription at Liberty Mutual's and the claimants' expense.

256.    As explained further herein, the Defendants' choice to base their fraudulent scheme on steering providers to prescribe these specific Topical Pain Products to be purportedly dispensed by the Pharmacy Defendants, in place of other less expensive products, was intentional to maximize the amounts collected by the Pharmacy Defendants in violation of New York's No-Fault laws.

### B.    OVERVIEW OF THE DEFENDANTS' SCHEME

257.    At all relevant times, the Pharmacy Defendants failed to comply with New York law governing pharmacies and were not eligible to seek or receive payments under New York's No-Fault laws as a result of the Defendants' scheme to defraud.

258.    The overarching purpose of the Defendants' scheme was to obtain No-Fault payments that the Pharmacy Defendants were not entitled to receive and to funnel these proceeds to Fakhlayev, G. Davidov, D. Davidov, Pinkhasov, and Aronov for their personal benefit.

259.    The Defendants achieved this goal by causing the Pharmacy Defendants to submit charges for a predetermined treatment protocol of medically unnecessary and expensive drugs and medications, including Topical Pain Products.

260.    The Defendants selected those drugs and medications comprising this predetermined treatment protocol to include those that could be acquired at low cost and then billed at inflated rates to maximize the Defendants' profits.

261.    As explained below, there is significant evidence that the prescriptions for drugs and medications billed by the Pharmacy Defendants to Liberty Mutual under New York's No-Fault laws were funneled to the Pharmacy Defendants pursuant to unlawful referral relationships.

262.    The Defendants devised and executed their scheme knowing that (a) the prescriptions were issued pursuant to predetermined treatment protocols of medically unnecessary and ineffective drugs and medications, which elevated profits over genuine patient care, (b) the prescriptions were invalid under New York law, (c) the prescriptions were issued in exchange for unlawful kickbacks or other incentives, and (d) the No-Fault claim documents submitted to Liberty Mutual falsely represented the Pharmacy Defendants' eligibility to collect No-Fault payments.

C.    **FRAUDULENT PHARMACY BILLING**

1.    **Predetermined Treatment Protocol**

263.    The Defendants' scheme was designed such that prescribers were limited to a predetermined set of drugs and medications; in doing so, the Defendants ensured that these drugs and medications were prescribed in all cases, regardless of whether the patients even needed or wanted them.

264.    As a result, the Pharmacy Defendants billed Liberty Mutual for the same recurring set of unnecessary, unwarranted, and ineffective Topical Pain Products, including: diclofenac sodium 3% gel, lidocaine 5% ointment, lidocaine 5% patches, and lidothol patches.

265.    The Defendants focused on billing for these expensive Topical Pain Products even though substantially similar products were available as over-the-counter drugs at a fraction of the cost.

266.    The Defendants intentionally based their fraudulent scheme on steering Referring Providers to prescribe these specific Topical Pain Products to be billed for by the Pharmacy

Defendants, in place of other less expensive products, to maximize the amounts collected by the Defendants in violation of New York's No-Fault laws.

267.    The charts attached hereto as Exhibits 1-5 lay bare the Defendants' disproportionate focus on billing for Topical Pain Products, including the following most commonly billed-for products:

| Drug Name | NDC | Pharmacy Defendant(s) |
|---|---|---|
| Diclofenac sodium 3% gel | 00115148361 | Atlas Pharmacy<br>Custom Rx<br>Top Choice |
| Diclofenac sodium 3% gel | 51672136307 | Custom Rx<br>Ready Rx<br>Top Choice |
| Diclofenac sodium 3% gel | 68462035594 | Atlas Pharmacy<br>Custom Rx<br>Leader Rx<br>Ready Rx<br>Top Choice |
| Diclofenac sodium 3% gel | 71085000300 | Custom Rx |
| Lidocaine 5% ointment | 50383093355 | Atlas Pharmacy<br>Custom Rx<br>Top Choice |
| Lidocaine 5% ointment | 51672300803 | Custom Rx<br>Ready Rx<br>Top Choice |
| Lidocaine 5% ointment | 51672300805 | Atlas Pharmacy<br>Ready Rx<br>Top Choice |
| Lidocaine 5% ointment | 52565000855 | Atlas Pharmacy<br>Top Choice |
| Lidocaine 5% ointment | 62332042450 | Atlas Pharmacy<br>Top Choice |
| Lidocaine 5% ointment | 64380078933 | Custom Rx<br>Ready Rx<br>Top Choice |
| Lidocaine 5% ointment | 65162091853 | Atlas Pharmacy<br>Custom Rx<br>Ready Rx<br>Top Choice |
|  |  |  |

| **Drug Name** | **NDC** | **Pharmacy Defendant(s)** |
|---|---|---|
| Lidocaine 5% ointment | 67877047380 | Atlas Pharmacy<br>Custom Rx<br>Ready Rx<br>Top Choice |
| Lidocaine 5% ointment | 68462041827 | Custom Rx<br>Leader Rx<br>Top Choice |
| Lidocaine 5% ointment | 70752011304 | Custom Rx<br>Leader Rx |
| Lidothol 4.5-5% patch | 53225102501 | Atlas Pharmacy<br>Custom Rx<br>Ready Rx<br>Top Choice |
| Lidocaine 5% patch | 00591352530 | Atlas Pharmacy<br>Custom Rx<br>Leader Rx<br>Ready Rx<br>Top Choice |
| Lidocaine 5% patch | 00603188016 | Custom Rx<br>Leader Rx<br>Ready Rx |

a.    Diclofenac Sodium 3% Gel

268.    One of the most popular drugs pushed by the Defendants was the generic form of diclofenac sodium 3% gel.

269.    For example, Atlas Pharmacy billed $1,898.20 for generic diclofenac sodium 3% gel with NDC No. 68462-0355-94.

270.    The published AWP of diclofenac sodium 3% gel (NDC No. 68462-0355-94) was $1,179.46 per 100-gram package.

271.    Claimants were prescribed a 200-gram supply of diclofenac sodium 3% gel under the Defendants' predetermined treatment protocol, which meant that the Defendants could charge approximately $1,887.14 for the drug (after application of the 20% reduction required under applicable New York law).

272.    The wholesale acquisition price ("WAC") of diclofenac sodium 3% gel sold under NDC No. 68462-0355-94 is only $92.97 for a 100-gram supply.

273.    The WAC is an important metric because it generally represents the actual price paid by the pharmacy to acquire the drug.

274.    Acquiring diclofenac sodium 3% gel at or around the WAC meant that the Defendants realized a profit of over $1,701.20 each time that the Pharmacy Defendants billed for 200 grams of diclofenac sodium 3% gel under NDC No. 68462-0355-94.

275.    The Pharmacy Defendants also exploited the AWP and WAC for diclofenac sodium 3% gel, which the Pharmacy Defendants billed under NDC Nos. 00115-1483-61, 51672-1363-07, and 68462-0355-94.

276.    The Pharmacy Defendants deliberately billed for diclofenac sodium 3% gel under NDC Nos. 00115-1483-61, 51672-1363-07, and 68462-0355-94 to exploit the spread between the AWP and the actual market price.

b.    Lidocaine 5% Ointment

277.    The Defendants also exploited the AWP and WAC for lidocaine 5% ointment, which the Pharmacy Defendants billed under NDC Nos. 68380-0789-33, 50383-0933-55, 51672-3008-03, 51672-3008-05, 52565-0008-55, 62332-0424-50, 65162-0918-53, 67877-0473-80, 68462-0418-27, and 70752-0113-04.

278.    For example, Ready Rx billed $1,528.80 for a 250 gram supply of lidocaine 5% ointment under NDC No. 64380-0789-33.

279.    The published AWP of a 50 gram supply of lidocaine 5% ointment sold under NDC No. 68380-0789-33 was approximately $380.93.

280.    The Pharmacy Defendants could charge approximately $1,523.72 for a 250 gram supply of lidocaine 5% ointment (after application of the 20% reduction required under applicable New York law) under NDC No. 68380-0789-33.

281.    The WAC for lidocaine 5% ointment sold under NDC No. 68380-0789-33 is $15.00 per 50 grams.

282.    Acquiring lidocaine 5% ointment at or around the WAC meant that the Defendants realized a profit of over $1,448.72 each time that the Pharmacy Defendants billed for 250 grams of lidocaine 5% ointment under NDC No. 68380-0789-33.

283.    The Defendants generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

c.    Lidocaine 5% Patches and Lidothol 4.5%-5% Patches

284.    The Defendants also exploited the AWP and WAC for lidocaine 5% patches and lidothol 4.5%-5% patches, which the Pharmacy Defendants billed under NDC Nos. 00591-3525-30, 00603-1880-16, and 53225-1025-01.

285.    For example, Atlas Pharmacy billed $458.28 for a supply of 60 lidocaine 5% patches under NDC No. 00591-3525-30.

286.    The published AWP of a supply of 30 lidocaine 5% patches sold under NDC No. 00591-3525-30 was approximately $280.81.

287.    The Pharmacy Defendants could charge approximately $449.30 for a 60 patch supply of lidocaine 5% patches (after application of the 20% reduction required under applicable New York law) under NDC No. 00591-3525-30.

288.    The WAC for lidocaine 5% patches sold under NDC No. 00591-3525-30 is $89.86 per 30 patches.

289.    Acquiring lidocaine 5% patches at or around the WAC meant that the Defendants realized a profit of over $269.58 each time that the Pharmacy Defendants billed for 60 lidocaine 5% patches under NDC No. 00591-3525-30.

290.    The Defendants generated substantial profits because they knew that all No-Fault claims were priced and paid according to the AWP and that they could acquire the billed-for drugs at a cost well below the drugs' AWP.

### 2.    Billing for Medically Worthless Topical Pain Products

291.    The Pharmacy Defendants billed Liberty Mutual for Topical Pain Products, including diclofenac sodium 3% gel, lidocaine 5% ointment, lidocaine 5% patches, and lidothol 4.5%-5% patches, that were medically unnecessary, not indicated for the treatment of musculoskeletal injuries, and/or chosen for their potential reimbursement value over lower-priced alternatives available over the counter.

292.    Pain medications, including topical NSAIDs, lack proven effectiveness for the treatment of widespread musculoskeletal pain.

293.    Pain medications may be indicated where the patient failed a trial of oral medications, has specific allergies to certain oral medications, or is incapable of swallowing pills.

294.    However, despite no documentation of an intolerance to oral NSAIDs or muscle relaxants, the Pharmacy Defendants' claimants were prescribed topical NSAIDS to treat a diagnosis of musculoskeletal pain.

295.    The specific Topical Pain Products billed to Liberty Mutual by the Pharmacy Defendants are not approved or intended to treat musculoskeletal injuries; rather, they are approved for the treatment of superficial pain, skin conditions, or nerve pain.

296.    Less toxic formulations of topical diclofenac sodium 3% gel, lidocaine 5% ointment, lidocaine 5% patches, and lidothol 4.5%-5% patches are available over the counter at significantly lower cost.

297.    By prescribing and dispensing a predetermined treatment protocol of among the most expensive pain medications, the Pharmacy Defendants subjected the patients to unnecessarily high concentrations of Topical Pain Products intended to treat conditions other than musculoskeletal pain for the purpose of exploiting these patients' available No-Fault benefits.

a.    Unnecessary Lidocaine 5% Ointment

298.    The Pharmacy Defendants billed Liberty Mutual for lidocaine 5% ointment. *See* Exhibit 11.

299.    Lidocaine 5% ointment is not a first-line treatment for musculoskeletal pain; rather, it is indicated for temporary pain relief for minor burns, skin abrasions, insect bites, and as a topical anesthetic.

300.    Indeed, the product labeling for lidocaine 5% ointment indicates that the drug is not effective when applied on intact skin, which is because lidocaine 5% ointment is incapable of sufficiently penetrating intact skin.  Even though topical lidocaine is sometimes used to treat neuropathic pain in adults, high concentrations of the drug must be used because topical lidocaine crosses the skin poorly.

301.    The patients prescribed lidocaine 5% ointment billed to Liberty Mutual by the Pharmacy Defendants did not have any documented minor skin conditions or true neuropathic pain warranting lidocaine 5% ointment.

302.    Moreover, lidocaine 4% cream under the brand name Aspercreme is available at neighborhood pharmacies at a small fraction of the amount charged by the Pharmacy Defendants for the lidocaine 5% ointment.

303.    True and accurate representations of Aspercreme are depicted below:





304. The Pharmacy Defendants' bills for lidocaine 5% ointment that traveled through the U.S. Mail are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 6-10.

        b.    <u>Unnecessary Diclofenac Sodium 3% Gel</u>

305. The Pharmacy Defendants billed Liberty Mutual for diclofenac sodium 3% gel. *See* Exhibit 12.

306. The Pharmacy Defendants billed for massive quantities of diclofenac sodium 3% gel, which is not effective, approved, or indicated for the topical treatment of musculoskeletal injuries, such as those sustained in a motor vehicle accident.

307.    Diclofenac sodium 3% gel is FDA-approved for the topical treatment of actinic keratoses.

308.    A true and accurate representation of the FDA approval of diclofenac sodium 3% gel (i.e., Solaraze) is depicted below:

SkyePharma Inc.
Attention: Gordon L. Schooley, Ph.D.
Senior Vice President, Clinical Research & Regulatory Affairs
10450 Science Center Drive
San Diego, CA 92121


Dear Dr. Schooley:

Please refer to your new drug application (NDA) dated October 20, 1998, received October 22, 1998, submitted under section 505(b) of the Federal Food, Drug, and Cosmetic Act for Solaraze (diclofenac sodium) Gel, 3%.

Please refer to our action letters dated October 21, 1999, and July 19, 2000.

We acknowledge receipt of your submissions dated July 28, August 15, September 22, and October 3, 2000.  Your submission of August 15, 2000, received August 16, 2000, constituted a complete response to our July 19, 2000 action letter.

This new drug application provides for the use of Solaraze (diclofenac sodium) Gel for the topical treatment of actinic keratoses.

We have completed the review of this application, as amended, and have concluded that adequate information has been presented to demonstrate that the drug product is safe and effective for use as recommended in the agreed upon enclosed labeling text.  Accordingly, the application is approved effective on the date of this letter.

309.    Diclofenac sodium 3% gel thus is designed for minimal depth of absorption to keep the drug in the skin to optimize treatment of actinic keratoses.

310.    The use of diclofenac sodium 3% gel in patients without actinic keratoses exposes the patients to increased and unnecessary risks for skin irritation, hypersensitivity, and photosensitivity.

311.    Diclofenac sodium gel also exists in a 1% concentration; it is an NSAID that may be effective in the treatment of pain in the peripheral joints, such as the hand or knee, but it has no proven efficacy for pain relief for larger and deeper joints, such as the spine or shoulder, to which the gel cannot penetrate.

312.    Simply because diclofenac sodium 3% gel is more concentrated than diclofenac sodium 1% or 2% gel does not mean that diclofenac sodium 3% gel is more effective for the treatment of joint pain, for which condition diclofenac sodium 3% gel is not indicated.

313.    Diclofenac sodium 3% gel is substantially more toxic topically and systematically than diclofenac sodium 1% gel.

314.    The Fee Schedule calls for reimbursement of diclofenac sodium 3% gel at a much higher rate than generic diclofenac sodium 1% gel.

315.    The generic diclofenac sodium 3% gel billed to Liberty Mutual by the Pharmacy Defendants has an AWP of $1,132.28 or $1,179.46 per 100-gram package.

316.    Generic diclofenac sodium 1% gel (NDC No. 69097-0524-44) has an AWP of less than $53.00 per 100-gram package.

317.    Therefore, the Defendants could charge no more than $85.00 for each prescription of 200 grams of generic diclofenac sodium 1% gel.

318.    However, the Defendants could charge over $940.00 for each prescription of 100 grams of generic diclofenac sodium 3% gel under NDC Nos. 00115-1483-61, 51672-1363-07, and 68462-0355-94.

319.    Diclofenac sodium 1% gel is available over the counter; a 100-gram tube of Voltaren topical 1% gel may be purchased at retail without a prescription for less than $23.00.

320.    True and accurate representations of Voltaren are depicted below:



321.    Accordingly, the Defendants were motivated by profit to ensure that the Referring

Providers ordered diclofenac sodium 3% gel for their patients instead of the less expensive

diclofenac sodium 1% gel even though the 3% preparation is neither approved nor effective at treating joint pain.

322.    The Pharmacy Defendants were not eligible for No-Fault reimbursement for the diclofenac sodium 3% gel billed to Liberty Mutual because these drugs were not medically necessary or effective in treating the claimants' musculoskeletal conditions.

323.    The Defendants induced the Referring Providers to prescribe diclofenac sodium 3% gel to permit the Defendants to submit inflated and/or excessive charges for this product.

324.    The Pharmacy Defendants' bills for diclofenac sodium 3% gel that traveled through the U.S. Mail are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 6-10.

### 3.    Unlawful Dispensing of Lidothol 4.5%-5% Patches

325.    The Pharmacy Defendants billed Liberty Mutual for lidothol 4.5%-5% patches ("Lidothol").  *See* Exhibit 13.

326.    The Pharmacy Defendants unlawfully dispensed Lidothol.

327.    Lidothol is a lidocaine and menthol patch.

328.    Lidothol is not approved by the Food and Drug Administration.

329.    Atlas Pharmacy, Custom Rx, Ready Rx, and Top Choice billed for Lidothol originating from a wholesaler utilizing NDC 53225-1025-01.

330.    This wholesaler is not registered with the State of New York.

331.    Importantly, New York Education Law § 6808 provides that "No person, firm, corporation or association shall possess drugs, prescriptions or poisons for the purpose of compounding, dispensing, retailing, wholesaling, or manufacturing, or shall offer drugs,

prescriptions or poisons for sale at retail or wholesale unless registered by the department as a pharmacy, wholesaler, manufacturer, or outsourcing facility."

332.    All claims identified in Exhibit 13 for billing of Lidothol originating from NDC 53225-1025-01 are fraudulent whereas the wholesaler was not in compliance with the Education Law.

333.    The Defendants submitted false bills through the U.S. Mail for fraudulent Lidothol patches.

334.    The Pharmacy Defendants' bills for Lidothol that traveled through the U.S. Mail are fraudulent and Liberty Mutual is entitled to recover payments and disclaim coverage in all such claims including, but not limited to, the claims listed in Exhibits 6-10.

### D.    DEFENDANTS' UNLAWFUL REFERRAL RELATIONSHIP WITH THE REFERRING PROVIDERS

335.    The Defendants' scheme to defraud required a high volume of facially valid prescriptions to permit the Pharmacy Defendants to submit charges for prescription Topical Pain Products.

336.    To maintain a steady flow of prescriptions for a particular set of expensive Topical Pain Products, the Defendants colluded with the Referring Providers, who specialize in No-Fault and had large available patient bases for the Defendants to take advantage of.

337.    The Referring Providers generated prescriptions for Topical Pain Products in accordance with the Defendants' predetermined prescription protocol regardless of whether the patients needed, or even wanted, the drugs and medications.

338.    Upon information and belief, the Defendants paid kickbacks or other incentives to the Referring Providers and/or their employees in exchange for these unlawful prescriptions in violation of New York law.

339.    The Referring Providers funneled these prescriptions to the Pharmacy Defendants without giving the patients any choice of where to fill the prescriptions.

340.    These unlawful referral relationships were crucial to the success of the Defendants' scheme to defraud and resulted in fraudulent charges for medically unnecessary and expensive drugs and medications, including Topical Pain Products.

## E.    FAILURE TO LAWFULLY OVERSEE DISPENSING OF DRUGS AND MEDICATIONS

341.    Nearly all of the Liberty Mutual claimants were prescribed the Topical Pain Products.

342.    Topical diclofenac, and NSAIDs in general, may cause side-effects, including damage to the intestines, the lining of the stomach, and other serious medical problems.

343.    Therefore, when an oral NSAID, such as cyclobenzaprine, is taken in conjunction with a topical NSAID, like diclofenac, there are certain health risks to the patient.

344.    The Referring Providers prescribed both oral and topical NSAIDs to the same patient without properly considering the potentially harmful effects.

345.    The Pharmacy Defendants dispensed to patients both the oral and topical NSAIDs without conducting a proper review to avoid therapeutic duplication presenting a risk to the health and safety of the claimants.

346.    An individual who is not a licensed pharmacist is not authorized to perform functions requiring professional judgment, including evaluating prescriptions for drug interactions and counseling patients. 8 N.Y.C.R.R. § 29.7(a)(21)(ii)(b)(1), (2), (6), (7).

347.    The Pharmacy Defendants' receipts do not identify who delivered the drug or medication to the patient.

348.    Upon information and belief, the Pharmacy Defendants' patients were not personally offered counseling on the issues raised by the prescriptions for both oral and topical NSAIDs, including therapeutic duplication, by a pharmacist or pharmacy intern over the phone or in person before the drugs and medications were delivered to the patients off of the Pharmacy Defendants' premises.

349.    In many instances, the delivery receipts purporting to confirm delivery of medications to claimants fail to document whether the claimant requested counseling.

350.    The receipt for the cyclobenzaprine HCL tab, diclofenac sodium 3% gel, and nabumetone tab purportedly delivered to claimant S.B. (claim no. 041816071-0005) by Top Choice leaves pertinent portions of the receipt blank, including whether S.B. requested counseling, who delivered the medications, and at what time.

351.    A true and accurate copy of the delivery slip for claimant S.B. is depicted below:



352.    The Defendants and Referring Providers disregarded patient safety when prescribing, dispensing, and delivering duplicative and medically unnecessary topical medications with oral NSAIDs in furtherance of their scheme to prescribe and bill for as many drugs and medications as possible.

353.    The Defendants violated their duty to the Pharmacy Defendants' patients to identify risks posed by the therapeutic duplication of topical and oral NSAIDs and to provide an offer of appropriate counseling personally from a licensed pharmacist or pharmacy intern over the telephone or in person before the medications were delivered off of the Pharmacy Defendants' premises.

### F.    UNDERLINED FORGED AND/OR ALTERED DME PRESCRIPTIONS

354.    The Defendants forged and altered DME prescriptions to justify the DME being dispensed to Liberty Mutual claimants.

355.    At least two (2) healthcare providers (including Arkham Rehman, M.D. and Patricia Kelly, D.O.) have admitted that their signatures were forged or that their prescriptions were altered to prescribe Topical Pain Products that were not prescribed by the physician.

356.    Arkham Rehman, M.D. ("Rehman") executed an affidavit that Topical Pain Products submitted by Atlas Pharmacy and Top Choice were fraudulent.

357.    A true and accurate copy of the relevant portion(s) of Rehman's affidavit is depicted below:

> **Arkam Rehman, M.D.,** being duly sworn, hereby states the following:
>
> 1.    I am a physician who is licensed to practice medicine in the State of New York under license number 298627. I have been licensed as a physician in the State of New York since April 12, 2019. I am double Board Certified in pain management and physiatry. I am also the owner of Apex Medical, P.C. (Apex), a medical office that conducts, among other testing and/or treatment, Evaluations and Management (E&M) services and Shockwave Therapy. My National Provider Identifier (NPI) number is 1013920602 and my Drug Enforcement Agency (DEA) number is FR8865000.

> 2.    This affidavit is being provided to demonstrate the fraudulent nature of certain medical services, diagnostic tests, referrals, and prescriptions that have been attributed to me personally, my NPI number, my DEA number and/or Apex. As will be demonstrated below, since I have been a practicing physician in the State of New York I did not issue or authorize the certain prescriptions for drug screening, toxicology services, prescription medications, prescription creams, prescription gels, diagnostic test(s), radiological test(s) or otherwise in connection with the prescriptions all as demonstrated in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 noted below.

3.    During the year 2020, my medical office provided, among other testing and/or treatments, E&M services, and Shockwave Therapy at two locations in Brooklyn, New York: 3027 Avenue V, Brooklyn, New York and 632 Utica Avenue, Brooklyn, New York. My role at these two locations was limited in scope. In or about the spring of 2021, I learned for the first time that my name and credentials were utilized by certain unknown individuals as part of a scheme to dispense medication, durable medical equipment and prescribe tests and procedures as noted below. I did not prescribe or authorize a prescription for drug screening, toxicology services, prescription medications, prescription creams, prescription gels, diagnostic testing, radiological testing or otherwise for the certain prescriptions as demonstrated in paragraphs 4, 6, 9, 12, 15, 18,

21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 below. A representative example of some of the prescriptions that are fraudulent in nature are shown below. The fact that a prescription is not specifically referenced below does not, and should not, be an indication that it is legitimate. As demonstrated below, the prescriptions that were allegedly prescribed by me at either 3027 Avenue V, Brooklyn, New York or 632 Utica Avenue, Brooklyn, New York are fraudulent in nature and are not legitimate.

## Top Choice Pharmacy Corp. – Top Choice Rx

12.    I did not prescribe nor authorize the prescription for any medication, creams, patches, or ointments as allegedly provided by Top Choice Pharmacy Corp. – Top Choice Rx as indicated below. The following prescription is also fraudulent in nature as I did not sign the prescription, I did not prescribe or request that the following medication be given to the patient, nor did I agree with the Statement of Medical Necessity contained within the prescription:



13.    The above prescription in paragraph 12 is a representative example and is fraudulent in nature as I never prescribed the item to be dispensed nor did I sign or authorize the prescription.

14.    The above-mentioned prescription in paragraph 12 presented by Top Choice Pharmacy Corp. – Top Choice Rx that is/are alleged to have been prescribed by me is/are fraudulent in nature as I never prescribed or authorized the item to be dispensed.

## Atlas Pharmacy, LLC

83.    I did not prescribe nor authorize the prescription for any medication, creams, patches, or ointments as allegedly provided by Atlas Pharmacy, LLC as indicated below. The following prescriptions are also fraudulent in nature as I did not sign the prescription, I did not prescribe or request that the following medication be given to the patient:

Physician Order Form

For: ████████ T█████         Bassam Rehman

Date of Birth:                 License Number: 298624

Telephone Number:             NPI Number: 1013920602

Date of Accident:

Date of Accident:
- □ CELEBREX 100MG – 1C BID #60
- ☑ CELEBREX 200MG – 1C BID #60
- □ CELEBREX 400MG – 1C QD #30
- ☑ MELOXICAM 7.5MG #30 1T BID
- □ MELOXICAM 15MG #30 1T QD
- □ IBUPROFEN 600MG #60 – 1T BID
- □ NAPROXEN 550MG #60 – 1T BID
- ☑ NAPRELAN 500MG #60 – 1T BID
- ☑ LIDOCAINE 5% PATCH    #30    #60    #90
  APPLY 1-3 PATCHES AA QD [12 HOURS ON AND 12 HOURS OFF)
- ☑ LIDOCAINE 5% OINT    100GM    150GM    200GM    250GM
  AP AA UP TO TID
- ☑ DICLOFENAC 1 % GEL –    100GM    750GM    AA TID UD
- □ CYCLOBENZAPRINE 7.5MG #30 – 1T TID
- □ CYCLOBENZAPRINE 10MG #30 – 1T TID
- □ TIZANIDINE 4MG #60 – 1T TID
- □ METAXALONE 800MG #90 – 1T TID
- □ FIORICET TABS #90 1T TID PRN
- □ SUMATRIPTAN 25MG , 50MG , 100MG TABS
- □ (MAXALT) RIZATRIPTAN 5MG, 10MG TABS
- □ RELPAX 20MG, 40MG TABS
- □ TOPIRAMATE 25MG , 50MG , 100MG
- □ DULOXETINE 30MG, 60MG CAPS
- ☑ GABAPENTIN 100MG, 600MG , 60QMG , 800MG
- ☑ VENLAFAXINE 25MG , 37.5MG , 50MG , AND 75MG TABLETS
- ☑ SERTRALINE 25MG , 50MG , 100MG
- □ ESCITALOPRAM 10MG , 20MG TABS
- ☑ CHLORZOXAZONE 250MG #60 – 1T TID PRN

Prescriber Signature: _____ Date: 5/18/20

84.    The above physician order form in paragraph 83 is a representative example and is
fraudulent in nature as I never prescribed the items to be dispensed nor did I sign or authorize the
prescriptions.

85.    The above-mentioned prescription in paragraph 83 presented by Atlas Pharmacy
LLC that is/are alleged to have been prescribed by me is/are fraudulent in nature as I never
prescribed or authorized the item to be dispensed.

## Conclusion

98.    The preceding examples of prescriptions and/or order forms all as specifically noted in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 are examples of the fraudulent prescriptions that were issued utilizing my credentials. The absence of a specific prescription and/or order form that is not specifically noted in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 should not be inferred to be a legitimate prescription.

99.    At no point in time while I and Apex was located at either 3027 Avenue V, Brooklyn, New York and/or 632 Utica Avenue, Brooklyn, New York did I ever issue any of the prescriptions as specifically noted in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 for any medication, creams, ointments, gels, patches, DME, MRI or any other matter. I also never knowingly issued, authored, or signed any letters of medical necessity pertaining to any of the aforementioned prescriptions or orders that were issued in my name.

100.    Any prescription that is presented that claims to come from me while I was associated with 3027 Avenue V, Brooklyn, New York and/or 632 Utica Avenue, Brooklyn, New York or contains my NPI number, license number or DEA number is fraudulent and is not legitimate.

101.    The prescriptions specifically noted in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95, that is/are presented that claims to come from me while I was located at 3027 Avenue V, Brooklyn, New York and/or 632 Utica Avenue, Brooklyn, New York or contains my NPI number, license number or DEA number is fraudulent and is not legitimate.

102. Any letter of medical necessity or statement of medical necessity pertaining to any of the above mentioned prescriptions specifically noted in paragraphs 4, 6, 9, 12, 15, 18, 21, 24, 27, 31, 33, 36, 39, 42, 45, 48, 51, 54, 57, 59, 62, 65, 68, 71, 74, 77, 80, 83, 86, 89, 92 and 95 that is/are presented that claims to come from me while I was located at 3027 Avenue V, Brooklyn, New York and/or 632 Utica Avenue, Brooklyn, New York or contains my NPI number, license number or DEA number is fraudulent and is not legitimate as I did not knowingly author or authorize the issuance of any such letter or statement.

103. I submit this affidavit under my own free will.

Arkam Rehman, M.D.

358. Patricia Kelly, D.O. ("Kelly") executed an affidavit that Topical Pain Products submitted by Custom Rx were fraudulent.

359. A true and accurate copy of the relevant portion(s) of Kelly's affidavit is depicted below:

**Patricia Kelly, D.O.**, being duly sworn, hereby states the following:

On or about January 20, 2018, I responded to an advertisement on Indeed.com for a position for a Medical Professional to assess patients' pain levels after motor vehicle accidents. I interviewed with a gentleman named Roman Israilov aka Roman Shakarova and was hired to being working for Metro Pain Specialist.

This was a part time position, usually three days a week. I primarily worked at three locations which include 204-12 Hillside Avenue, Hollis, NY, 409 Rockaway Ave, Brooklyn, NY and 160-59 Rockaway Blvd, Jamaica, NY. I spent most of my time at 204-12 Hillside Ave, Hollis, NY. All these locations were controlled by layperson managers and each of the locations has treatment protocols in place.

The 204-12 Hillside Ave, Hollis, NY location was controlled by Roman Israilov (Shakarova) whose contact number is 646-764-5507, Victoria Shakarova whose contact number is 646-371-5235 and Regina Shakarova whose contact information I do not have.

During my tenure with Metro Pain Specialist and Triborough NY Medical Practice, I was instructed to prescribe certain medications to all patients even if I felt they were not warranted. If I did not prescribe those medications as directed, a manager would speak with me and tell me the patient's attorney had called, and that the patient requested the prescription. In those instances, I would speak to the patients and if patient denied this, I would write "refused" in the patient's chart.

In reviewing multiple bills provided to me by Liberty Mutual Insurance Company, I see that my signature was forged by others or copied, unknown to me.

My actual signature is as follows ( the top being my normal signature and the bottom my scribbled signature when I am in a hurry):



I am not technologically inclined; therefore, I did not use the electronic prescription system. Victoria Shakarova, Regina Shakarova and Larissa had my prescription pad and electronic filing credentials and would do prescriptions on my behalf through the electronic system. There is no notification or acknowledgment sent to me so prescriptions could have been filled without my knowledge or consent.

> It was apparent that this extent of testing, treatment, DME and prescriptions were part of a protocol that increased the medical billing to the patient's insurance company.
>
> I attest that the information provided is provided voluntarily and is accurate and true and I submit this affidavit under my own free will.
>
> Patricia Kelly, D.O.

360.    Liberty Mutual was induced to pay the Pharmacy Defendants for Topical Pain Products dispensed based upon forged and/or altered prescriptions sent through the U.S. Mail in violation of New York law.

361.    Accordingly, the Pharmacy Defendants unlawfully dispensed Topical Pain Products in New York and were not eligible to submit No-Fault claims to Liberty Mutual whereas they were in violation of state and local licensure laws.

## VI.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

362.    The Defendants (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false No-Fault claim reimbursement documentation, (b) intentionally violated the laws of the United States by devising and intending to devise, schemes to defraud and obtain money and property using false and fraudulent pretenses and representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) to execute, or attempt, such fraudulent schemes.

363.    Unless otherwise pled to the contrary, all documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, letters of medical necessity, peer-review rebuttals, other No-Fault claim reimbursement

documents, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

364.    Every automobile insurance claim detailed within this Complaint involved at least two uses of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the canceled payment instruments to the financial institution(s) from which the draft(s) were drawn.

###    A.    ATLAS PHARMACY ENTERPRISE

365.    Fakhaylev, D. Davidov, and G. Davidov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and/or invoices/bills from Atlas Pharmacy to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

366.    Fakhaylev, D. Davidov, and G. Davidov caused Atlas Pharmacy to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Fakhaylev, D. Davidov, and/or G. Davidov mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

367.    Fakhaylev, D. Davidov, and G. Davidov's participation in the operation and management of the Atlas Pharmacy enterprise, which included, among other things, (a) owning Atlas Pharmacy, (b) facilitating unlawful prescriptions between Atlas Pharmacy and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to Atlas Pharmacy's patients, and (d) causing Atlas Pharmacy to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered Atlas Pharmacy completely ineligible for No-Fault reimbursement under New York law.

368.     As a result of the above-described conduct, Fakhaylev, D. Davidov, and G. Davidov purposely caused Atlas Pharmacy to make a misrepresentation every time that Atlas Pharmacy mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

369.     Moreover, because (a) Fakhaylev, D. Davidov, and G. Davidov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Atlas Pharmacy enterprise, (b) Fakhaylev, D. Davidov, and G. Davidov caused Atlas Pharmacy to seek No-Fault reimbursement from Liberty Mutual (even though Atlas Pharmacy were not lawfully entitled to such reimbursement), and (c) Atlas Pharmacy used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Fakhaylev, D. Davidov, and G. Davidov committed mail fraud.

370.     At all relevant times, Fakhaylev, D. Davidov, and G. Davidov knew that Atlas Pharmacy used (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Atlas Pharmacy.

371.     Liberty Mutual estimates that the unlawful operation of the Atlas Pharmacy enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 14 and incorporated herein by reference as if outlined in its entirety.

### B.   CUSTOM RX ENTERPRISE

372.   Fakhaylev, Pinkhasov, and Aronov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and/or invoices/bills from Custom Rx to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

373.   Fakhaylev, Pinkhasov, and Aronov caused Custom Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Custom Rx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

374.   Fakhaylev, Pinkhasov, and Aronov's participation in the operation and management of the Custom Rx enterprise, which included, among other things, (a) owning Custom Rx, (b) facilitating unlawful prescriptions between Custom Rx and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to Custom Rx's patients, and (d) causing Custom Rx to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered Custom Rx completely ineligible for No-Fault reimbursement under New York law.

375.   As a result of the above-described conduct, Fakhaylev, Pinkhasov, and Aronov purposely caused Custom Rx to make a misrepresentation every time that Custom Rx mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

376.   Moreover, because (a) Fakhaylev, Pinkhasov, and Aronov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Custom Rx enterprise, (b) Fakhaylev, Pinkhasov, and Aronov caused Custom Rx to seek No-Fault reimbursement from Liberty Mutual (even though Custom Rx were not lawfully entitled

to such reimbursement), and (c) Custom Rx used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Fakhaylev, Pinkhasov, and Aronov committed mail fraud.

377.    At all relevant times, Fakhaylev, Pinkhasov, and Aronov knew that Custom Rx (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Custom Rx.

378.    Liberty Mutual estimates that the unlawful operation of the Custom Rx enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 15 and incorporated herein by reference as if outlined in its entirety.

## C.    READY RX ENTERPRISE

379.    Pinkhasov and Aronov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and/or invoices/bills from Ready Rx to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

380.    Pinkhasov and Aronov caused Ready Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Ready Rx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

381.    Pinkhasov and Aronov's participation in the operation and management of the Ready Rx enterprise, which included, among other things, (a) owning Ready Rx, (b) facilitating unlawful prescriptions between Ready Rx and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to Ready Rx's patients, and (d) causing Ready Rx to submit

false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered Ready Rx completely ineligible for No-Fault reimbursement under New York law.

382.     As a result of the above-described conduct, Pinkhasov and Aronov purposely caused Ready Rx to make a misrepresentation every time that Ready Rx mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

383.     Moreover, because (a) Pinkhasov and Aronov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Ready Rx enterprise, (b) Pinkhasov and Aronov caused Ready Rx to seek No-Fault reimbursement from Liberty Mutual (even though Ready Rx were not lawfully entitled to such reimbursement), and (c) Ready Rx used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Pinkhasov and Aronov committed mail fraud.

384.     At all relevant times, Pinkhasov and Aronov knew that Ready Rx (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Ready Rx.

385.     Liberty Mutual estimates that the unlawful operation of the Ready Rx enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 16 and incorporated herein by reference as if outlined in its entirety.

### D.     TOP CHOICE ENTERPRISE

386.     Fakhaylev, D. Davidov, and G. Davidov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records

and/or invoices/bills from Top Choice to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

387.    Fakhaylev, D. Davidov, and G. Davidov caused Top Choice to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Top Choice mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

388.    Fakhaylev, D. Davidov, and G. Davidov's participation in the operation and management of the Top Choice enterprise, which included, among other things, (a) owning Top Choice, (b) facilitating unlawful prescriptions between Top Choice and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to Top Choice's patients, and (d) causing Top Choice to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered Top Choice completely ineligible for No-Fault reimbursement under New York law.

389.    As a result of the above-described conduct, Fakhaylev, D. Davidov, and G. Davidov purposely caused Top Choice to make a misrepresentation every time that Top Choice mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

390.    Moreover, because (a) Fakhaylev, D. Davidov, and G. Davidov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Top Choice enterprise, (b) Fakhaylev, D. Davidov, and G. Davidov caused Top Choice to seek No-Fault reimbursement from Liberty Mutual (even though Top Choice were not lawfully entitled to such reimbursement), and (c) Top Choice used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Fakhaylev, D. Davidov, and G. Davidov committed mail fraud.

391.    At all relevant times, Fakhaylev, D. Davidov, and G. Davidov knew that Top Choice (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Top Choice.

392.    Liberty Mutual estimates that the unlawful operation of the Top Choice enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 17 and incorporated herein by reference as if outlined in its entirety.

### E.    LEADER RX ENTERPRISE

393.    Aronov either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing claimants' prescription records and/or invoices/bills from Leader Rx to be mailed to Liberty Mutual (and/or counsel for claimants) or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

394.    Aronov caused Leader Rx to falsely certify that they were eligible to be reimbursed under New York's No-Fault laws each time that Leader Rx mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Liberty Mutual.

395.    Aronov's participation in the operation and management of the Leader Rx enterprise, which included, among other things, (a) owning Leader Rx, (b) facilitating unlawful prescriptions between Leader Rx and prescribers, (c) dispensing medically unnecessary and ineffective drugs and medications to Leader Rx's patients, and (d) causing Leader Rx to submit false and fraudulent No-Fault benefit claims to Liberty Mutual, rendered Leader Rx completely ineligible for No-Fault reimbursement under New York law.

396.    As a result of the above-described conduct, Aronov purposely caused Leader Rx to make a misrepresentation every time that Leader Rx mailed (or was caused to mail) a document to Liberty Mutual claiming eligibility for No-Fault reimbursement.

397.    Moreover, because (a) Aronov engaged in (or caused) the above-described unlawful conduct through their participation in the operation and management of the Leader Rx enterprise, (b) Aronov caused Leader Rx to seek No-Fault reimbursement from Liberty Mutual (even though Leader Rx were not lawfully entitled to such reimbursement), and (c) Leader Rx used (or were caused to use) the U.S. Mail to seek reimbursement, it is clear that Aronov committed mail fraud.

398.    At all relevant times, Aronov knew that Leader Rx (including its employees, owner(s), contractors, and agents), a customer, a claimant, an insurance carrier, a claimant's attorney, other healthcare providers, or Liberty Mutual would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Leader Rx.

399.    Liberty Mutual estimates that the unlawful operation of the Leader Rx enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 18 and incorporated herein by reference as if outlined in its entirety.

## VII.    SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY LIBERTY MUTUAL

400.    At all relevant times during the operation of the Pharmacy Defendants' enterprises, Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov purposely caused the Pharmacy Defendants to falsely certify that they were eligible to be reimbursed under New York's No-Fault

laws to induce Liberty Mutual to promptly pay charges related to prescription drugs and other pharmacy services purportedly provided to Liberty Mutual claimants who were caused to be customers of the Pharmacy Defendants.

401. At all relevant times, Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov directly participated in the operation and management of the Pharmacy Defendants by directing unlawful referrals for prescriptions.

402. Because Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov were responsible for causing the Pharmacy Defendants (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by the Pharmacy Defendants, then the Pharmacy Defendants were caused to falsely claim eligibility for No-Fault reimbursement each and every time that the Pharmacy Defendants sought No-Fault reimbursement from Liberty Mutual.

403. As alleged above, Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov caused the Pharmacy Defendants to create and submit to Liberty Mutual No-Fault claim reimbursement documents and demands for payment relative to prescription drugs and other pharmacy services that were (a) unlawful, (b) fraudulently reported, (c) forged, (d) completely unnecessary, (e) falsely charged, and/or (f) not actually provided as represented.

404.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

405.    Many of the Defendants' false, fraudulent, and unlawful acts are not readily evident within the documents submitted to Liberty Mutual by the Defendants and upon which Liberty Mutual relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

406.    The Defendants' fraudulent concealment is demonstrated by the evidence of forged doctor signatures and/or fictitious pharmacy scripts detailed herein.

407.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accordance with all applicable New York state licensing requirements.

408.    Thus, every time that Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov caused the Pharmacy Defendants to submit No-Fault reimbursement demands to Liberty Mutual, Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov necessarily certified that the Pharmacy Defendants were eligible to be reimbursed under New York's No-Fault laws.

409.    The full extent of Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov fraudulent and unlawful acts relative to their participation in the Pharmacy Defendants' enterprises were not known to Liberty Mutual until shortly before it commenced this action.

## VIII.    LIBERTY MUTUAL'S JUSTIFIABLE RELIANCE

410.    Each claim submitted to Liberty Mutual by the Pharmacy Defendants was verified according to Insurance Law § 403.

411.    Fakhaylev, D. Davidov, G. Davidov, Pinkhasov, and Aronov, as owners of the Pharmacy Defendants, were responsible for the proper conduct of the Pharmacy Defendants in accordance with New York law.

412.    To induce Liberty Mutual to promptly pay the Pharmacy Defendants' patient invoices, the Defendants submitted (or caused to be submitted) to Liberty Mutual NF-3 bills certifying that the Pharmacy Defendants were eligible to be reimbursed under New York's No-Fault laws.

413.    Further, to induce Liberty Mutual to promptly pay the fraudulent charges for prescription drug and other pharmacy services purportedly provided to Liberty Mutual claimants, the Defendants hired attorneys to pursue collection of the fraudulent charges from Liberty Mutual. These attorneys routinely file time-consuming and expensive lawsuits and arbitration matters against Liberty Mutual.

414.    Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within 30 days.  The facially valid documents submitted to Liberty Mutual by (or on behalf of) the Pharmacy Defendants in support of the fraudulent charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Liberty Mutual to justifiably rely on them.

415.    The Defendants concealed from Liberty Mutual the truth regarding the Pharmacy Defendants' reimbursement eligibility under New York law.

416.    Liberty Mutual relied on the forged prescriptions of Drs. Rehman and Kelly submitted by Atlas Pharmacy, Custom Rx, and Top Choice.

417.    In reasonable reliance on these misrepresentations, Liberty Mutual paid money to the Pharmacy Defendants to its detriment.

418. Liberty Mutual would not have paid these monies had the Defendants provided true and accurate information about the Pharmacy Defendants' reimbursement eligibility under New York law, including (a) the Pharmacy Defendants' No-Fault reimbursement eligibility under N.Y. Ins. Law § 5101, *et seq*., and (b) the fact and necessity of the services purportedly provided to those Liberty Mutual claimants and customers of the Pharmacy Defendants eligible for insurance coverage under an automobile insurance policy issued by Liberty Mutual.

419. As a result, Liberty Mutual was caused to pay the Pharmacy Defendants over $1,678,643.57 in reasonable reliance on the Pharmacy Defendants' false No-Fault claim reimbursement documentation and the Defendants' false representations regarding the Pharmacy Defendants' eligibility for reimbursement under New York's No-Fault laws.

## IX.   **DAMAGES**

420. The Defendants' pattern of fraudulent conduct injured Liberty Mutual in its business and property by reason of the aforesaid violations of state and federal law. Although it is not necessary for Liberty Mutual to calculate damages with specificity at this stage in the litigation (whereas Liberty Mutual's damages continue to accrue), Liberty Mutual's injury includes, but is not limited to, compensatory damages for payments in connection with first-party claims in excess of $1,678,643.57, the exact amount to be determined at trial, including:

(a) Payments made to Atlas Pharmacy in connection with first-party claims in excess of $326,268.97, the exact amount to be determined at trial. The chart annexed at Exhibit 6, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Atlas Pharmacy in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(b) Payments made to Custom Rx in connection with first-party claims in excess of $583,046.87, the exact amount to be determined at trial. The chart annexed at Exhibit 7, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Custom Rx in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(c)  Payments made to Ready Rx in connection with first-party claims in excess of $424,215.71, the exact amount to be determined at trial. The chart annexed at Exhibit 8, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Ready Rx in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(d)  Payments made to Top Choice in connection with first-party claims in excess of $273,345.82, the exact amount to be determined at trial. The chart annexed at Exhibit 9, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Top Choice in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

(e)  Payments made to Leader Rx in connection with first-party claims in excess of $71,766.20, the exact amount to be determined at trial. The chart annexed at Exhibit 10, and incorporated herein as if set forth in its entirety, identifies Liberty Mutual's payments to Leader Rx in connection with first-party ("No-Fault") claims determined to be fraudulent as of the filing of this Complaint.

## X.  CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### TOP CHOICE PHARMACY CORP. ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov)

421.  Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

422.  In furtherance of their operation and management of Top Choice Pharmacy Corp. ("Top Choice"), Defendants, Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

423.  The Count I Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 17.

424.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

425.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

426.    Payments made by Liberty Mutual to Top Choice were delivered through the U.S. Mail.

427.    As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Topical Pain Products and other drugs dispensed and delivered by the Count I Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

428.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Top Choice for the benefit of one or more of the Count I Defendants that would not otherwise have been paid.

429.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count I Defendants to continue this scheme without being detected.

430.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

431.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Top Choice for the benefit of the Count I Defendants.

432.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

433.    Top Choice constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

434.    The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

435.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count I Defendants' conduct.

436.    The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

437.    Because of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### TOP CHOICE PHARMACY CORP. ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov)

438.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

439.    Through their participation in the operation and management of Top Choice Pharmacy Corp. ("Top Choice"), Defendants, Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

440.    The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Top Choice through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 17, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

441.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of Top Choice, even though Top Choice, as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

442.    The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

443.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

444.    Because of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### CUSTOM RX PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov)

445.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

446.    In furtherance of their operation and management of Custom Rx Pharmacy LLC ("Custom Rx"), Defendants, Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

447.    The Count III Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 15.

448.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

449.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

90

450.    Payments made by Liberty Mutual to Custom Rx were delivered through the U.S. Mail.

451.    As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Topical Pain Products and other drugs dispensed and delivered by the Count III Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

452.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Custom Rx for the benefit of one or more of the Count III Defendants that would not otherwise have been paid.

453.    The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count III Defendants to continue this scheme without being detected.

454.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

455.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Custom Rx for the benefit of the Count III Defendants.

456.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

457.    Custom Rx constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

458.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

459.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count III Defendants' conduct.

460.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

461.    Because of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT IV</u>
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**CUSTOM RX PHARMACY LLC ENTERPRISE**
**(Against Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov)**

462.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

463.    Through their participation in the operation and management of Custom Rx Pharmacy LLC ("Custom Rx"), Defendants, Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

464.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Custom Rx through a pattern of racketeering

activity, including numerous acts of mail fraud as outlined in Exhibit 15, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

465.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of Custom Rx, even though Custom Rx, as a result of the Count IV Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

466.    The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

467.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

468.    Because of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### READY RX LLC ENTERPRISE
### (Against Albert Pinkhasov and Igor Aronov)

469.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

470.    In furtherance of their operation and management of Ready Rx LLC ("Ready Rx"), Defendants, Albert Pinkhasov and Igor Aronov (collectively, "Count V Defendants") intentionally

prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

471.    The Count V Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 16.

472.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

473.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

474.    Payments made by Liberty Mutual to Ready Rx were delivered through the U.S. Mail.

475.    As documented above, the Count V Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Topical Pain Products and other drugs dispensed and delivered by the Count V Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

476.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Ready Rx for the benefit of one or more of the Count V Defendants that would not otherwise have been paid.

477.    The Count V Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count V Defendants to continue this scheme without being detected.

478.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

479.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Ready Rx for the benefit of the Count V Defendants.

480.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

481.    Ready Rx constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

482.    The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

483.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count V Defendants' conduct.

484.    The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

485.    Because of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims

submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### READY RX LLC ENTERPRISE
### (Against Albert Pinkhasov and Igor Aronov)

486.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

487.    Through their participation in the operation and management of Ready Rx LLC ("Ready Rx"), Defendants, Albert Pinkhasov and Igor Aronov (collectively, "Count VI Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

488.    The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Ready Rx through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 16, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

489.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of Ready Rx, even though Ready Rx, as a result of the Count VI Defendants' unlawful conduct, were not eligible to collect such No-Fault payments.

490.    The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

491.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

492.    Because of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### LEADER RX PHARMACY LLC ENTERPRISE
### (Against Igor Aronov)

493.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

494.    In furtherance of their operation and management of Leader Rx Pharmacy LLC ("Leader Rx"), Defendant, Igor Aronov ("Count VII Defendant") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

495.    The Count VII Defendant employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 18.

496.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

497.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

498.    Payments made by Liberty Mutual to Leader Rx were delivered through the U.S. Mail.

499.    As documented above, the Count VII Defendant repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Topical Pain Products and other drugs dispensed and delivered by the Count VII Defendant to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

500.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Leader Rx for the benefit of the Count VII Defendant that would not otherwise have been paid.

501.    The Count VII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a significant period, thus enabling the Count VII Defendant to continue this scheme without being detected.

502.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

503.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Leader Rx for the benefit of the Count VII Defendant.

504.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

505.    Leader Rx constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

506.    The Count VII Defendant associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

507.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count VII Defendants' conduct.

508.    The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

509.    Because of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ATLAS PHARMACY LLC ENTERPRISE**
**(Against Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov)**

510.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

511.    In furtherance of their operation and management of Atlas Pharmacy LLC ("Atlas Pharmacy"), Defendants, Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov (collectively, "Count VIII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false No-Fault claim reimbursement documentation in connection with Liberty Mutual insurance claims in furtherance of this scheme to defraud.

512.    The Count VIII Defendants employed two or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 14.

513.    Among other things, NF-3 forms, documents, notes, reports, invoices, prescription forms, delivery receipts, health insurance claim forms, assignment of benefit forms, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and/or payment requests were routinely delivered to Liberty Mutual through the U.S. Mail.

514.    Policies of insurance were delivered to two or more Liberty Mutual claimants through the U.S. Mail.

515.    Payments made by Liberty Mutual to Atlas Pharmacy were delivered through the U.S. Mail.

516.    As documented above, the Count VIII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Liberty Mutual related to Topical Pain Products and other drugs dispensed and delivered by the Count VIII Defendants to collect payment from Liberty Mutual under the Personal Injury Protection benefits portion of the Liberty Mutual policies and applicable New York No-Fault laws.

517.    As a result of, and in reasonable reliance upon, the mailing and/or submission of those misleading documents and materially false representations, Liberty Mutual, by its agents and employees, issued drafts to Atlas Pharmacy for the benefit of one or more of the Count VIII Defendants that would not otherwise have been paid.

518.    The Count VIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Liberty Mutual from discovering this scheme for a

significant period, thus enabling the Count VIII Defendants to continue this scheme without being detected.

519.    The facts set forth above constitute indictable offenses according to 18 U.S.C. § 1341 (mail fraud).

520.    The activities alleged in this case had the direct effect of causing funds to be transferred from Liberty Mutual to Atlas Pharmacy for the benefit of the Count VIII Defendants.

521.    Liberty Mutual is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Liberty Mutual's overall financial well-being and adversely affect insurance rates.

522.    Atlas Pharmacy constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

523.    The Count VIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

524.    Liberty Mutual is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property because of the Count VIII Defendants' conduct.

525.    The Count VIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Liberty Mutual's injury.

526.    Because of the Count VIII Defendants' violations of 18 U.S.C. § 1962(c), Liberty Mutual is entitled to recover from them three times the damages sustained because of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ATLAS PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov)

527.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

528.    Through their participation in the operation and management of Atlas Pharmacy LLC ("Atlas Pharmacy"), Defendants, Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov (collectively, "Count IX Defendants") conspired with each other to violate 18 U.S.C. § 1962(d).

529.    The Count IX Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(d) by agreeing to conduct the affairs of Atlas Pharmacy through a pattern of racketeering activity, including numerous acts of mail fraud as outlined in Exhibit 14, and through the preparation and/or submission of fraudulent insurance claim documents, including NF-3 forms, to Liberty Mutual.

530.    The purpose of the conspiracy was to obtain No-Fault payments from Liberty Mutual on behalf of Atlas Pharmacy, even though Atlas Pharmacy, as a result of the Count IX Defendants' unlawful conduct, was not eligible to collect such No-Fault payments.

531.    The Count IX Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of insurance claim documents containing material misrepresentations and/or material omissions.

532.    Liberty Mutual has been injured in its business and property because of this conspiratorial conduct whereas Liberty Mutual has been induced to make No-Fault claim payments as a result of the defendants' unlawful conduct described herein.

533.    Because of this violation of 18 U.S.C. § 1962(d), the Count IX Defendants are jointly and severally liable to Liberty Mutual, and Liberty Mutual is entitled to recover from each

of the defendants identified three times the damages sustained because of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
## COMMON LAW FRAUD
### (Against All Defendants)

534.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

535.    The Defendants schemed to defraud Liberty Mutual by, among other things, (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC.

536.    The Defendants' scheme to defraud Liberty Mutual was dependent upon a succession of material misrepresentations of fact related to Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC's eligibility for and entitlement to No-Fault reimbursement under New York law.

537.    The misrepresentations of fact by the Defendants included, but were not limited to, material misrepresentations of fact made in Atlas Pharmacy LLC, Custom Rx Pharmacy LLC,

Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC's NF-3 forms, prescription forms, patient treatment records, delivery receipts, health insurance claim forms, other No-Fault claim reimbursement documents, letters, and/or payment requests.

538.    The Defendants' representations were false or required disclosure of additional facts to render the documents, information, and materials furnished not misleading.

539.    The misrepresentations were intentionally made by the Defendants in furtherance of their scheme to defraud Liberty Mutual by submitting claims on behalf of Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC demanding payment of No-Fault insurance benefits.

540.    The Defendants knew that the representations contained in the No-Fault claim reimbursement documentation relating to Liberty Mutual claimants were false, and were made to induce Liberty Mutual to make payments for claims that were not legitimate.

541.    Liberty Mutual reasonably relied, to its detriment, upon the Defendants' material misrepresentations concerning Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC's eligibility to receive No-Fault reimbursement in paying numerous bills for prescription drugs and other pharmacy expenses according to New York's No-Fault insurance laws.

542.    Liberty Mutual's damages include, but are not necessarily limited to, No-Fault monies paid to Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC—totaling more than $1,678,643.57—for prescription drug and other pharmacy expenses and services rendered to Liberty Mutual claimants, even though Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice

Pharmacy Corp., and Leader Rx Pharmacy LLC, were, at all relevant times, ineligible to receive No-Fault reimbursement under New York law.

## COUNT XI
## UNJUST ENRICHMENT
### (Against All Defendants)

543.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 420 as if fully set forth herein.

544.    As alleged herein, the Defendants, through various means, conspired to induce Liberty Mutual to make numerous and substantial payments to Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC in connection with claims made under New York's No-Fault laws.

545.    When Liberty Mutual paid Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC, Liberty Mutual reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Defendants, or those persons working under their control, made (or were caused to make) concerning Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC's reimbursement eligibility under New York's No-Fault laws.

546.    Every No-Fault reimbursement payment that Liberty Mutual was caused to make to (or for the benefit of) Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC during this scheme constitutes a benefit that the Defendants aggressively caused Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC to seek and voluntarily accept.

547.    Throughout their scheme, the Defendants caused Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC to wrongfully obtain a multitude of payments from Liberty Mutual—totaling over $1,678,643.57—as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

548.    Under New York law, the Defendants had no legal right to seek, collect, or retain assigned No-Fault benefit payments made by Liberty Mutual in connection with claims submitted by (or on behalf of) the Defendants because Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC (a) billed Liberty Mutual for drugs that were not medically necessary and were completely unjustified to treat the Liberty Mutual claimants' purported injuries, (b) falsely charged for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charged Liberty Mutual for drugs at grossly excessive rates, (d) dispensed drugs and medications in violation of applicable regulatory and licensing requirements, and/or (e) maintained unlawful relationships with prescribers and induced them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC.

549.    As a direct and proximate result of this unlawful conduct relating to the billing for fraudulent, unnecessary, and ineffective drugs with respect to Liberty Mutual claimants, at no point were Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC ever eligible for reimbursement under New York's No-Fault laws.

550.    Throughout this scheme, the Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Liberty Mutual was wrongfully induced to make to Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC.

551.    Retention of those benefits by any of the Defendants would violate fundamental principles of justice, equity, and good conscience.

## COUNT XII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
(Against Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC)

552.    Liberty Mutual re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 420 as if set forth fully herein.

553.    To be eligible to receive assigned No-Fault benefits, an assignee provider of healthcare services, including providers of pharmacy services, must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

554.    In view of its (a) billing Liberty Mutual for drugs that were not medically necessary and were completely unjustified as a means of treating the Liberty Mutual claimants' purported injuries, (b) falsely charging for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's No-Fault laws, (c) charging Liberty Mutual for drugs at grossly excessive rates, (d) dispensing drugs and medications in violation of applicable regulatory and licensing requirements, and (e) maintaining unlawful relationships with prescribers and inducing them, through financial means or otherwise, to furnish prescriptions for medically unnecessary drugs that were to be filled by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC were, at all relevant times, completely

ineligible for No-Fault reimbursement under New York law, and thus has no standing to submit or receive assigned No-Fault benefits.

555.    Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC continue to submit assigned No-Fault claims to Liberty Mutual demanding payment, and other assigned No-Fault claims remain pending with Liberty Mutual.

556.    Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC continue to challenge Liberty Mutual's prior claim denials.

557.    Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC continue to commence legal action, including arbitrations filed with the American Arbitration Association, against Liberty Mutual seeking payment of No-Fault benefits allegedly due and owing.

558.    A justifiable controversy exists between Liberty Mutual and Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC because Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC reject Liberty Mutual's ability to deny such claims.

559.    Liberty Mutual has no adequate remedy at law.

560.    Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC also will continue to bill Liberty Mutual for No-Fault Benefit payments absent a declaration by this Court that its activities are unlawful, and that Liberty Mutual has no obligation to pay the pending, previously denied, and/or future No-Fault

claims submitted by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC.

561.    Accordingly, Liberty Mutual requests a judgment according to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that (a) that Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC have no standing to seek, collect, or retain any payments made by Liberty Mutual in connection with assigned No-Fault benefits, and (b) that Liberty Mutual has no legal obligation to make any payment on any unpaid or otherwise pending bills that have been submitted to Liberty Mutual by, or on behalf of, Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC.

## XI.    <u>DEMAND FOR RELIEF</u>

WHEREFORE, plaintiffs, LM General Insurance Company, American States Insurance Company, Liberty Mutual Personal Insurance Company, LM Insurance Corporation, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Company, Peerless Indemnity Insurance Company, Safeco Insurance Company of America, Safeco Insurance Company of Illinois, First Liberty Insurance Corporation, and Wausau Underwriters Insurance Company (collectively, "Liberty Mutual"), respectfully pray that judgment enter in their favor, as follows:

<u>COUNT I</u>
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**TOP CHOICE PHARMACY CORP. ENTERPRISE**
**(Against Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count I Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT II
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### TOP CHOICE PHARMACY CORP. ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Georgiy Davidov, and David Davidov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count II Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### CUSTOM RX PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count III Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

### COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### CUSTOM RX PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, Albert Pinkhasov, and Igor Aronov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count IV Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT V**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**READY RX LLC ENTERPRISE**
**(Against Albert Pinkhasov and Igor Aronov)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count V Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

**COUNT VI**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**READY RX LLC ENTERPRISE**
**(Against Albert Pinkhasov and Igor Aronov)**

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count VI Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### LEADER RX PHARMACY LLC ENTERPRISE
### (Against Igor Aronov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count VII Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT VIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ATLAS PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count VIII Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ATLAS PHARMACY LLC ENTERPRISE
### (Against Petr Yakubovich Fakhaylev, G. Davidov, and D. Davidov)

(a) AWARD Liberty Mutual's actual and consequential damages to be established at trial;

(b) AWARD Liberty Mutual's treble damages according to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

(c) GRANT injunctive relief enjoining the Count IX Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT X
## COMMON LAW FRAUD
### (Against All Defendants)

(a) AWARD Liberty Mutual's actual damages in an amount to be determined at trial;

(b) AWARD Liberty Mutual its costs, including, but not limited to, investigative costs incurred in the detection of the Defendants' illegal conduct;

(c) AWARD Liberty Mutual its costs in defending No-Fault collection suits filed by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC seeking payment of false and fraudulent invoices; and

(d) GRANT any other relief this Court deems just.

## COUNT XI
## UNJUST ENRICHMENT
### (Against All Defendants)

(a) AWARD Liberty Mutual's actual and consequential damages to be determined at trial; and

(b) GRANT any other relief this Court deems just.

## COUNT XII
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC)

(a) DECLARE that Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC, at all relevant times, were caused to be operated in violation of one or more state licensing requirements applicable to pharmacies, thus rendering Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx

LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC completely ineligible to seek or receive reimbursement under New York's No-Fault laws;

(b) DECLARE that Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC's activities are unlawful;

(c) DECLARE that Liberty Mutual has no obligation to pay any pending, previously-denied, and/or future No-Fault insurance claims submitted by Atlas Pharmacy LLC, Custom Rx Pharmacy LLC, Ready Rx LLC, Top Choice Pharmacy Corp., and Leader Rx Pharmacy LLC; and

(d) GRANT all other relief this Court deems just and appropriate.

## <u>JURY TRIAL DEMAND</u>

The plaintiffs demand a trial by jury on all claims.

[SIGNATURE PAGE FOLLOWS]

KING, TILDEN, MCETTRICK & BRINK, P.C.,

*/s/ Shauna L. Sullivan*

_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Shauna L. Sullivan (SS5624)
ssullivan@ktmpc.com
350 Granite St, Ste 2204
Braintree, MA 02184
(617) 770-2214

Attorneys for the Plaintiffs,
*LM General Insurance Company,*
*American States Insurance Company,*
*Liberty Mutual Personal Insurance Company,*
*LM Insurance Corporation,*
*Liberty Insurance Corporation,*
*Liberty Mutual Fire Insurance Company,*
*Liberty Mutual Insurance Company,*
*Peerless Indemnity Insurance Company,*
*Safeco Insurance Company of America,*
*Safeco Insurance Company of Illinois,*
*The First Liberty Insurance Corporation, and*
*Wausau Underwriters Insurance Company*

Dated: March 11, 2025